**Mary B. GRIGSBY, Plaintiff-Appellant,**

v.

**REYNOLDS METALS COMPANY,**
Defendant-Appellee.

No. 86–7387.

United States Court of Appeals,
Eleventh Circuit.

July 15, 1987.

sitting by designation.

Andrew P. Campbell, Leitman, Siegal & Payne, P.C., S. Lynne Stephens, Birmingham, for plaintiff-appellant.

C.V. Stelzenmuller, Thomas, Taliaferro, Forman, Burr & Murray, F.A. Flowers, III, Birmingham, Ala., for defendant-appellee.

Before HILL and JOHNSON, Circuit Judges, and Eschbach[*], Senior Circuit Judge.

HILL, Circuit Judge:

Appellant Mary B. Grigsby brings this appeal from the district court's entry of summary judgment in favor of her employer, Reynolds Metals Company, on her disparate treatment claims under Title VII and the Age Discrimination in Employment Act (ADEA). Grigsby objects to the method by which the district court received evidence from the parties on summary judgment, and further claims that the evidence she submitted was sufficient to raise a genuine issue of fact as to Reynolds' discriminatory intent. After reviewing the entire record, we conclude that the particular facts of this case support the entry of summary judgment in favor of Reynolds.

## I. FACTS

At the time she commenced this lawsuit in 1985, Grigsby was 50 years old and had been continuously employed by Reynolds since 1956. From 1979 until March of 1984, Grigsby held the position of Sales Service Supervisor in Reynolds' Wire, Rod & Bar (WRB) plant in Listerhill, Alabama. In late 1983, Reynolds decided to close its WRB facility for economic reasons. In an effort to retain as many WRB employees as possible, Reynolds formulated an overall reduction in force (RIF) at its nearby Alloys Sheet & Plate (Alloys) plant of 46 salaried employees. Upon the closing of the WRB plant, Grigsby was transferred to the Alloys facility to replace J.T. Brewer, a 29 year-old male who was terminated in the RIF. Although she had different job responsibilities in the Alloys plant, Grigsby

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

retained her old title as Sales Service Supervisor until November 1, 1984, when it was changed to Claims Specialist to correspond with her changed duties. Grigsby took no reduction in pay as a result of her transfer, although her "Hay" grade was lowered from a level 5 to a level 3.[1] In addition to Grigsby, at least fourteen male, former WRB salaried employees also were reduced in Hay grade upon transfer to the Alloys plant during the RIF.

In June of 1984, the District Traffic Manager at the Alloys plant resigned. At that time Reynolds decided to expand the job duties of that position to include shipping functions as well as traffic responsibilities. This newly expanded position required a person with detailed knowledge of and experience with Reynolds' cost accounting system, capitalization projects, investigative auditing procedures, and computer systems. Reynolds also sought a person who was familiar with the entire Alloys plant operation and who had experience in supervising professional employees. Grigsby applied and was considered for this vacancy, but she was deemed not qualified for the position.[2] After considering several industrial engineers, Reynolds ultimately selected L. Regan Ragland, a male in his early thirties, to fill the position. Reynolds considered him the best qualified applicant because of his nine years experience with its cost system, capitalization projects, auditing procedures, and computer technology. In addition, Ragland had eight years experience in various departments of the Alloys plant as well as four years experience supervising professional industrial engineers.[3]

Grigsby filed an amended charge of age and sex discrimination with the EEOC on September 12, 1984. After receiving a right to sue letter, Grigsby filed this action in federal district court alleging that she had been demoted and denied promotions because of her age and sex, in violation of the ADEA, 29 U.S.C. § 621 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.* On February 26, 1986, Reynolds filed a motion for summary judgment. The district court then ordered both parties to file all evidentiary matters to be considered in support of or in opposition to this motion by March 11, six days prior to the date set for trial. The district court granted summary judgment in favor of Reynolds on March 14, holding that Reynolds had met its burden of articulating legitimate, nondiscriminatory reasons for its employment decisions and that Grigsby had failed to put forth sufficient evidence showing the existence of a genuine issue of fact as to whether the employer's reasons were merely a pretext for discrimination. This appeal followed.

## II. METHOD OF PRESENTING EVIDENCE ON SUMMARY JUDGMENT

Grigsby initially objects to the method by which the district court received evidence on Reynolds' summary judgment motion, claiming that the court erred in requiring both parties to submit all evidence in support of or in opposition to the motion at the same time. Grigsby argues that this ap-

---

**1.** Reynolds uses a job evaluation system called the "Hay" system, in which salaried jobs are analyzed according to industrial engineering principles and are assigned a numerical rating or grade. This grading system is then used to determine a salary range for each job. Reynolds admits in its brief that although Grigsby's reclassification from a level 5 to a level 3 job did not affect her immediate salary, it did represent some diminution of her prospects for future increases because due to the lower Hay grade, the salary range of her new job was lower.

**2.** Initially, Grigsby and four other persons from the Customer Service Department were considered for the District Traffic Manager posi-

tion, but Reynolds determined that none of these persons, including the plaintiff, was qualified based on the new job responsibilities. Reynolds then decided to consider several persons from its Industrial Engineering Department, and it was from this group that the successful applicant was eventually chosen.

**3.** In her brief, Grigsby also refers to her unsuccessful application for the position of Purchasing Agent in the Alloys plant. The district court noted this claim but did not address it on the merits, because the court concluded that Grigsby in her deposition expressly disavowed any intent to include such a claim in the present lawsuit. *See* Dist. Ct. Order at 7.

proach ignored the shifting burdens of production for plaintiffs and defendants which apply in Title VII and ADEA cases, and claims that the court's requirement of simultaneous production deprived her of a full and fair opportunity to show pretext. She contends that an employment discrimination plaintiff should not have to present evidence of pretext until after the employer has shown a legitimate, nondiscriminatory reason for its actions.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by defendant were merely a pretext for discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94; *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25. The Eleventh Circuit has adopted this three-step approach for ADEA cases as well. *See Archambault v. United Computing Systems, Inc.,* 786 F.2d 1507, 1512 (11th Cir.1986); *Price v. Maryland Casualty Co.,* 561 F.2d 609, 612 (5th Cir.1977).

■ We note initially that Grigsby seeks to raise an issue that was never raised before the district court. While we might be inclined to review this issue favorably had it first been presented to and rejected by the district judge, there is nothing in the record to indicate that the plaintiff either sought or was denied any relief from the procedure of which she now complains. As a general rule, we agree that when the defendant has offered evidence of a legitimate, nondiscriminatory reason for its employment decision, the plaintiff should not be denied the opportunity to submit additional evidence of pretext after seeing the defendant's evidence of justification. In the present case, however, Grigsby neither objected to the simultaneous submissions ordered by the court, nor did she request the privilege of supplementing the record with additional evidence of pretext. In fact, she has never even alleged that she has any relevant additional evidence to present, or disclosed the nature of any such evidence.

■ The *McDonnell Douglas-Burdine* proof structure "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Service v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *see also Harris v. Birmingham Bd. of Educ.,* 712 F.2d 1377, 1382 (11th Cir.1983). In this case, it appears that all available evidence was in fact before the district court when it ruled on Reynolds' summary judgment motion. At least it is clear that Grigsby never asked for nor was denied the opportunity to present any additional evidence whatsoever.[4] Accepting Grigsby's argument on this point would be to exalt form over substance, for the ultimate inquiry is not whether the district court conformed exactly to the *McDonnell Douglas-Burdine* proof structure but whether there is evidence that Reynolds intentionally discriminated against Grigsby. There is no indication from the record that the procedure

---

**4.** We reserve for a later day the question of the effect of a district court's refusal, in deciding a summary judgment motion, to allow the plaintiff to file additional pretext evidence in response to the employer's evidence of a legitimate, nondiscriminatory reason for its actions.

Here, the district court has not refused to allow any such filing because none has been sought. The question of whether the court would have been in error for refusing such a request is not before us.

now requested by the plaintiff would have shed any further light on this issue.

## III. AVAILABILITY OF SUMMARY JUDGMENT WHERE PLAINTIFF PROVES PRIMA FACIE CASE

■ The district court implicitly found that Grigsby established a prima facie case of age and sex discrimination with respect to both her "demotion" during the RIF and her non-selection for the position of District Traffic Manager in the Alloys plant.[5] Grigsby now contends that her establishment of a prima facie case of discrimination in itself rendered summary judgment inappropriate. Grigsby seems to suggest that whenever a plaintiff has introduced evidence sufficient to create a *McDonnell Douglas-Burdine* prima facie case of discrimination, there necessarily exists a genuine issue of fact irrespective of the defendant's evidence of a legitimate, nondiscriminatory reason for its actions. Such an expansive rule is not supported by either precedent or logic.

The *McDonnell Douglas-Burdine* patterns of proof were designed to ease the evidentiary burdens on employment discrimingtion plaintiffs, who rarely are fortunate enough to have access to direct evidence of intentional discrimination. *See Thornbrough v. Columbus and Greenville R.R.*, 760 F.2d 633, 638 (5th Cir.1985). We must keep in mind, however, that while the *McDonnell Douglas-Burdine* framework is "a valuable tool for analyzing evidence in cases involving alleged disparate treatment[,] ... that framework is only a tool. The 'ultimate question' in a disparate treatment case is not whether the plaintiff es-

tablished a prima facie case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984) (quoting *Aikens*, 460 U.S. at 714–15, 103 S.Ct. at 1481–82). In this context, the plaintiff's prima facie case "raises an inference of discrimination only because we presume these acts, *if otherwise unexplained*, are more likely than not based on the consideration of impermissible factors." *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949–50 (emphasis added). Thus, this court has properly held that the establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in all cases. *See Pace v. Southern Ry. System*, 701 F.2d 1383, 1389 (11th Cir.1983), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1984); *Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369, 371 (5th Cir.1980).[6]

■ We agree that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." *Thornbrough*, 760 F.2d at 640; *Beard v. Annis*, 730 F.2d 741, 743 (11th Cir.1984); *Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir. 1979). We also recognize, however, that the inference of intentional discrimination raised by a plaintiff's prima facia case may be stronger or weaker, depending upon the facts of the particular case. *See Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985) ("To a large extent, of course, the strength or weakness of the inference of discrimination

---

**5.** The district court's order in this case concluded that

> Because this evidentiary record shows without dispute that Reynolds Metals Company has articulated by admissible evidence legitimate nondiscriminatory reasons for its employment decisions ... and that plaintiff employee has failed to meet her burden of showing that the proffered reasons were not the true reasons for such employment decisions but rather a pretext, Reynolds Metals Company is entitled to summary judgment in this case on all ADEA and Title VII sex discrimination claims....

Dist. Ct. Order at 13. Although the district court never specifically addressed whether Grigsby established each element of a prima facie case of age and sex discrimination, the fact that the court based its decision upon the employer's justification evidence and the plaintiff's failure to prove pretext implies that Grigsby met her burden of establishing a prima facie case.

**6.** The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

created by the employee's *prima facie* case defines the nature of the employer's rebuttal."), *cert. denied,* —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1986). In some cases, the defendant's evidence of a legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by the plaintiff's prima facie case. Such is the case here. Of course, even in the face of such strong justification evidence, a plaintiff might still create an issue of fact and avoid summary judgment by introducing additional evidence of pretext. But a plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting Grigsby's prima facie case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by Reynolds.

## IV. PROPRIETY OF SUMMARY JUDGMENT IN THIS CASE

■ Grigsby's final contention is that summary judgment on each of her claims was inappropriate because her evidence was sufficient to raise a genuine issue of fact as to the pretextual nature of Reynolds' proffered justifications for its employment decisions. First, with respect to Grigsby's transfer from the WRB plant to the Alloys plant with a reduction in Hay grade, Reynolds asserted that its economically induced RIF necessarily resulted in diminished future expectations for a great many Reynolds employees. While Grigsby is correct that the mere fact of a RIF does not preclude her from alleging and proving a case of discrimination, *see Williams v. General Motors Corp.,* 656 F.2d 120 (5th Cir. Unit B 1981),[7] *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), she introduced no evidence in this case tending to show that the RIF affected her employment prospects any more severely than it did the prospects of the other Reynolds employees involved. The district court therefore correctly concluded that there

was no evidence of any discriminatory treatment on the basis of age or sex between Grigsby and the large number of other people affected by the closing of the WRB plant and the overall RIF.

Grigsby also asserts that the district court erred in completely accepting Reynolds justification that it did not select her for the District Traffic Manager position because it found someone else who was objectively more qualified. Her entire evidence on this point consisted of her affidavit and several accompanying exhibits. Grigsby showed that her salary performance appraisal for the period preceding her application exceeded that of Regan Ragland, the candidate who was eventually chosen for the position. Grigsby also asserted that the supposedly objective standards for the position were created after Ragland was selected for the job. Further, Grigsby stated in her affidavit that she was told by Jim Ogborne, Reynolds' Customer Service Manager, that "the characters the Traffic Manger would have to deal with were pretty rough and he did not want me to have to deal with this type of thing." Grigsby Aff. at 2. However, in light of Reynolds' extensive evidence of the relative qualifications of the applicants, Grigsby's testimony and exhibits simply fail to raise any inference of pretext or discriminatory intent.

It is undisputed that Ragland had far greater experience with Reynolds' cost accounting system, capitalization projects, auditing procedures, and computer systems than did Grigsby. Ragland also had eight years experience in various departments of the Alloys plant, including four years experience supervising professional engineers, as opposed to Grigsby whose experience was largely limited to the smaller WRB plant. Moreover, the fact that Grigsby received superior performance ratings in her WRB position does not refute the fact that Ragland was better qualified for the more sophisticated job Reynolds sought to fill in the Alloys plant. Although Grigsby urges that Ragland prepared his own job descrip-

---

7. This circuit has adopted as precedent all decisions of Unit B of the former Fifth Circuit.

*Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

tion after he was selected for the position, she did not counter Reynolds' evidence that this was standard procedure, and she introduced no evidence that the adopted criteria were merely pretext for Reynolds' discriminatory intent. Finally, while Ogborne's alleged statement regarding the "rough characters" the Traffic Manager would have to deal with might be somewhat probative if combined with other more substantial evidence, it is too indefinite to justify by itself an inference of discriminatory intent on Reynolds' part.

This is not a situation where, as Grigsby contends, the district court impermissibly weighed the parties' evidence instead of merely looking for the existence of a genuine issue of fact. Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer. Grigsby's conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where Reynolds has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions. *See Meiri v. Dacon,* 759 F.2d at 998 (conclusory allegations of discrimination insufficient to raise inference of pretext and thereby defeat summary judgment motion). Under these circumstances, Reynolds was entitled to summary judgment.

## V. CONCLUSION

When requested by a party, it is preferable for a district court considering a summary judgment motion in a disparate treatment case to direct the parties to submit their evidentiary materials one after the other, in the order contemplated by the three-step *McDonnell Douglas-Burdine* analysis. But where, as in this case, the plaintiff has not moved for such an order of submission and has not attempted to supplement the record with any additional pretext evidence, requiring simultaneous submissions is not improper. It is clear in this case that all available evidence was before the district court, and based on that evidence we conclude that summary judgment was properly granted in the employer's favor. Our review of the record reveals that Grigsby failed to raise a genuine issue of fact that either her transfer and demotion or her failure to be selected for the District Traffic Manager position was the result of intentional discrimination on the part of Reynolds. Therefore, the decision of the district court is

AFFIRMED.