896 F.Supp. 1150 (1994)
Carolyn A. WILLIAMS, Plaintiff,
v.
HARCO DRUGS, INC., Defendant.
No. 93-0008-CB-M.
United States District Court, S.D. Alabama, Southern Division.
January 31, 1994.
*1151 Ronnie L. Williams, Henry Brewster, Mobile, AL, for plaintiff.
Mark A. Newell, Mobile, AL, Susan L. Gunnells, Barker & Janecky, P.C., Mobile, AL, for defendant.

ORDER
BUTLER, Chief Judge.
This matter is before the court on the motion for summary judgment filed by the defendant Harco Drugs, Inc. ("Harco"). The plaintiff, Carolyn Williams, alleges that she was fired by the defendant because she is black and because she filed a claim for worker's compensation. Williams has brought claims of discriminatory discharge and retaliatory discharge under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981, and a claim of retaliatory discharge under Alabama Code Section 25-5-11, which makes it illegal to fire someone because they file for worker's compensation benefits. As the plaintiff has failed to rebut the defendant's evidence of legitimate reasons for her discharge, the defendant's motion for summary judgment is GRANTED on all claims.

I. Factual Background
Carolyn Williams had been employed by Eckerd Drug Stores as an assistant manager for a number of years when several of its Mobile area stores were bought by Harco; Williams accepted a transfer to the assistant manager's position at the Dauphin Island Parkway store after the change in ownership became effective in May, 1990. Soon thereafter, problems arose. Ms. Williams and her manager, John Moorer, quarreled from the beginning of their relationship. Both Moorer and Williams complained to Darren Ingram, who was Harco's District Manager in charge of the Dauphin Island Parkway store. Ingram told Moorer to document his difficulties with Ms. Williams; these complaints, which all concern Ms. Williams' supposedly insubordinate attitude, unreliability and lack of cooperation, are included in the defendant's exhibits.
Williams' problems were not limited to her relationship with Moorer. In June, 1990, Pam McAdams, the assistant manager at the Harco store in Bel Air Mall, notified Ingram of a recent experience she had had with Ms. *1152 Williams. A customer had attempted to return an electric razor to Ms. Williams' store, but had been told by Ms. Williams that the item would have to be returned to the Harco store at which it was purchased. The pharmacist on duty during this exchange between Ms. Williams and the customer overruled Ms. Williams and allowed the customer to receive a refund. Ms. Williams subsequently brought the razor to Ms. McAdams' store, where it had been purchased, and gave it to Ms. McAdams in a fashion that struck Ms. McAdams as inappropriately rude. She complained to Ingram, who had her write out an explanation of the incident. Ms. Williams was also reprimanded by Carl Newsome, another supervisor, for her failure to allow the customer to return the razor without difficulty.
Williams subsequently took some time off. Ingram, concerned about the friction between Ms. Williams and Moorer, and Ms. Williams' performance in general, decided during her absence to transfer Williams to the Chickasaw branch, and notified her of his decision at that time. When Ms. Williams returned to work and asked Ingram why she had been moved, Ingram set up a meeting with her, at which he explained his reasons. In response, Ms. Williams stated that she felt she had been moved because she was black. Ingram told her that her suspicions were unfounded, and then went through Williams' responsibilities as an assistant manager with her. This list included an admonition to "work at getting along with all other associates in our company." Ingram recorded the topics discussed during his meeting with Ms. Williams in a memo included with his affidavit.
A few days after this discussion, Ms. Williams went to the Dauphin Island Parkway store to pick up her check. According to John Moorer, she again disrupted the store with negative comments, one of which was made in a voice loud enough to be heard by customers. When Moorer told Ingram about this latest development, which occurred only a few dozen hours after he had specifically asked Ms. Williams to make an effort to get along with fellow employees, Ingram decided to fire her. He explained his decision to Ms. Williams at a meeting held several days later.

II. Title VII and Section 1981 Claims

A. Does Section 1981 Offer Relief?
Before the Civil Rights Act of 1991, Section 1981 did not offer relief to plaintiffs seeking compensation for discriminatory discharge in this circuit. Weaver v. Casa Gallardo, 922 F.2d 1515, 1520 (11th Cir.1991) (interpreting Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). While that is no longer the case, the Eleventh Circuit has interpreted the 1991 Act to be prospective, not retroactive, with respect to cases pending before the enactment of that legislation. Baynes v. AT & T Technologies, Inc., 976 F.2d 1370 (11th Cir.1992). At least one district court in this circuit has interpreted Baynes to apply to cases whose underlying facts arose before the 1991 Act. Sample v. Schuller Int'l, Inc., 836 F.Supp. 876 (S.D.Ga.1993). If we were to adopt the same approach in this case, the plaintiff would have no claim under section 1981, as the events that underlie this suit arose in the summer and fall of 1990 and the Civil Rights Act of 1991 did not become effective until November 21, 1991. See The Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071 (1991). Although the court tends to concur with this interpretation, since the Eleventh Circuit has not spoken on the question, the court will assume that Williams' section 1981 claim is not barred.[1]
The standard of proof to be applied to a section 1981 claim of discriminatory discharge is the same as that used in analyzing a like Title VII claim. Pinkard v. Pullman-Standard, A Div. of Pullman Inc., 678 F.2d 1211, 1224 (5th Cir.Ala.1982), reh'g denied 685 F.2d 1383 (5th Cir.Ala.1982), cert. denied, *1153 Pullman Standard, Inc. v. Pinkard, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). Accordingly, the court will address both claims together.

B. The Plaintiff's Prima Facie Case
A plaintiff in a Title VII or section 1981 suit establishes a prima facie case by showing 1) that she is a member of a protected group, 2) that she was qualified for her position, 3) that she was fired, and 4) that she was replaced by a member of a nonminority group. Marks v. Prattco, Inc., 607 F.2d 1153, 1155 (5th Cir.1979) (adapting the test put forth in McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), to discriminatory discharge cases). This altered McDonnell Douglas analysis was later streamlined, so that "the prong requiring proof of qualification is removed ..." Pace v. Southern Railway System, 701 F.2d 1383, 1386 (11th Cir.), cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).[2] Thus, "any disagreement between parties regarding whether a particular plaintiff was adequately performing his job (should) be brought out at the stage of the proceedings when the defendant articulates legitimate reasons for the discharge and the plaintiff shoulders his burden of proving that the reasons are pretextual." Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1495, n. 2 (11th Cir.1987). Given this modification of the McDonnell Douglas test, the defendant implicitly concedes that the plaintiff has established her prima facie case, and the court must examine the justifications offered by the defendant for her discharge.

C. The Defendant's Rebuttal
Once the plaintiff has made out her prima facie case, the defendant must offer evidence to show that the plaintiff was fired for a nondiscriminatory reason. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; Marks, 607 F.2d at 1155, n. 1. "The defendant need not persuade the court that it was actually motivated by the proffered reasons (cite omitted). It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981).
An employee's faults may appear minor, but to force the plaintiff to demonstrate that the cited reasons are pretextual, all Harco need show is a plausible non-discriminatory reason for firing Williams. "Federal courts `do not sit as a super-personnel department that reexamines an entity's business decisions.'" Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir.1988)). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." Burdine, 450 U.S. at 255, 101 S.Ct. at 1095.
Harco has submitted several affidavits from Williams' co-employees and supervisors which testify to the bases for Williams' termination. These documents, along with several contemporaneous disciplinary reports, recount Williams' various failings, including absenteeism, insubordination, surliness towards customers and co-employees, and other such shortcomings. This evidence "raises a genuine issue of fact as to whether (Harco) discriminated against the plaintiff", Burdine, 450 U.S. at 255, 101 S.Ct. at 1095, and satisfies Harco's burden of production. It is now up to Williams to demonstrate that the reasons cited for her discharge are a mere pretext for racial discrimination.

D. Pretext
Once a defendant has met its burden, the plaintiff must in effect start from scratch and prove that the rationale proffered for her discharge was illusory and that the actual reason was discriminatory. "(A) reason cannot be proved to be `a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination *1154 was the real reason" for the discharge. St. Mary's Honor Center v. Hicks, ___ U.S. ___, ___, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407, 422 (1993) (emphasis omitted). "A mere `scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
Williams' brief and affidavit in support do not address or contradict the contentions made in the Harco affidavits and disciplinary reports. In fact, Williams' only proof of pretext lies in her affidavit, in which she claims that her problems with Harco began when she complained about a lack of black management, and in an affidavit from Sally Finney, a former co-employee of Williams, who claims that John Moorer (Williams' manager) was a bigot and that Williams was a conscientious worker (but who was not employed by Harco at the time of the underlying events).
These submissions may not meet the standards established in the Federal Rules regarding motions in opposition to summary judgment motion, let alone rise to the level of meeting the plaintiffs burden of proving the defendant's reasons to be pretextual. "When a motion for summary judgment is made and supported (with affidavits setting forth specific facts), an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e). The plaintiffs proof contains no "specific facts", and most likely fail to meet the strictures of this rule.
However, even if the court were to accept her vague allegations of discrimination as enough to meet Rule 56(e), her unsupported accusations are not enough to prove pretext. "(C)onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where (an employer) has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir.1988) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir.1987)). At the most, the plaintiff has presented this court with suspicions, which do not create a triable issue of fact. "(The) plaintiff, when faced with a motion for summary judgment, cannot rely on the attenuated possibilities that (the finder of fact) would infer a discriminatory motive, but rather must ... establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact." Pace, 701 F.2d at 1391.
In general, summary judgment is a disfavored method of resolving employment discrimination cases. Grigsby, 821 F.2d at 595. This does not mean that it is unavailable. "Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." Grigsby, 821 F.2d at 596. Since the defendant has proffered evidence of nondiscriminatory discharge, and the plaintiff has failed to offer any evidence that the defendant's explanation is pretextual, the defendant's motion for summary judgment on the plaintiff's section 1981 and Title VII claims is GRANTED.

II. Wrongful Termination
The plaintiff also alleges that she was terminated because she sought worker's compensation benefits. The Alabama Workmen's Compensation act, Ala.Code 1975 § 25-5-11.1 reads in part:
No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover worker's compensation benefits under this chapter ...
In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala.1988), the Alabama Supreme Court decided to apply the basic McDonnell Douglas framework this court used earlier in this order on the section 1981 and Title VII claims to actions under § 25-5-11.1. Thus, the plaintiff must first establish a prima facie case by showing that she was fired for seeking worker's compensation benefits; *1155 the defendant must then provide evidence of a legitimate reason, at which point the plaintiff must show that the cited legitimate reason is pretextual. Id. at 1369. Nothing in the plaintiff's pleading, brief or affidavit even touches on any alleged action by the defendant that could be interpreted as evidence of a retaliatory discharge. Accordingly, the defendant's motion for summary judgment on the plaintiff's retaliatory discharge claim is also GRANTED.
It is so ORDERED.
NOTES
[1] Similarly, Title VII did not allow recovery of compensatory or punitive damages before the 1991 Act, see U.S. v. Burke, 504 U.S. 229, 237, 112 S.Ct. 1867, 1872, 119 L.Ed.2d 34, 45 (1992), and these types of compensation were held to be barred by the court in Samples. Again, the court will assume that compensatory and punitive damages are permissible should the plaintiff prevail on her section 1981 claim.
[2] Although Pace and several other cases cited in this order were brought under the Age Discrimination in Employment Act ("ADEA"), they use the same McDonnell Douglas analysis as Title VII and section 1981 claims, Grigsby v. Reynolds Metals Co., 821 F.2d 590, 594 (11th Cir.1987), and are therefore of precedential value in determining the outcome of this case.