Rachel ROBINSON, Plaintiff,

v.

AFA SERVICE CORPORATION,
Defendant.

Civ. A. No. 1:93–CV–657–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 19, 1994.

Harvey A. Clein, Office of Harvey A. Clein, Atlanta, GA, for plaintiff.

Forrest W. Hunter, Thomas Lowell West, III, Alston & Bird, Atlanta, GA, for defendant.

## ORDER OF THE COURT

CAMP, District Judge.

This action is before the Court on Defendant's Motion for Summary Judgment [# 11] and Plaintiff's Motion for Extension of Time [# 15]. For the following reasons, Defendant's motion for summary judgment is **GRANTED.** Plaintiff's motion for extension is unopposed and also is **GRANTED.**

### I. BACKGROUND

Plaintiff Rachel Robinson brought this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. Plaintiff charges that Defendant AFA Service Corporation ("AFA") discharged her because of her age and in retaliation for her claim that she had been the subject of discrimination. Defendant claims that Ms. Robinson, an at-will employee, was fired due to unacceptable work performance and poor interpersonal skills.

### II. SUMMARY JUDGMENT STANDARD

Rule 56(c), Fed.R.Civ.P., defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact … and the moving party is entitled to judgment as a matter of law." The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). "[U]nless the movant for summary judgment meets its burden under Rule 56, the obligation of the opposing party does not arise even if no opposing evidentiary material

is presented by the party opposing the motion." *Id.*

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. Tech-South, Inc.,* 833 F.2d 1525, 1529 (11th Cir. 1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court interpreted Rule 56(c) to require the moving party to demonstrate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

In either situation, only when the movant meets this burden, does the burden shift to the opposing party, who must then present evidence to establish the existence of a material issue of fact. *Id.* The nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist. *Id.*

### III. UNDISPUTED FACTS

Based on the pleadings, depositions, answers to interrogatories and admissions and affidavits on file, as well as the parties' statements of undisputed material facts and the responses thereto, and viewing all evidence and factual inferences in a light most favorable to the non-moving party, the following material facts emerge as undisputed.

Plaintiff joined AFA as full-time secretary in March, 1988. At that time, the company was operated under a management agreement with Arby's Inc. In February or May of 1991, Ms. Robinson—then 44 years old—became Mr. Lloyd Fritzmeier's secretary. When the management agreement with Arby's expired, Mr. Fritzmeier, age 46, became President of AFA. In July, 1991, Ms. Robinson began working for Tom Grant, age 43, the Senior Vice President of Marketing and Communications. Plaintiff worked as a secretary for both Mr. Grant and Mr. Fritzmeier until her discharge in June, 1992. AFA's secretaries were at that time called "coordinators," and Plaintiff's title was "Executive Coordinator" because she was assigned to the company's President and SVP. During the time she worked for Mr. Fritzmeier and Mr. Grant, Plaintiff's duties included those tasks ordinarily associated with an executive secretarial position.

Diane Skinner was hired by AFA in October, 1991, as the Director of Human Resources. Prior to Ms. Skinner's appointment, Plaintiff applied for the position but was not accepted. Shortly after assuming her position, Ms. Skinner began receiving complaints from the other coordinators regarding Plaintiff's "arrogant attitude" and "condescending manner." Skinner Affidavit, ¶ 2, attached as Exh. 2 to Defendant's Motion [# 11]. Ms. Skinner personally observed Plaintiff's manner on many occasions. *Id.* at ¶ 3. Ms. Skinner too experienced problems working with Plaintiff on projects for which they were jointly responsible. *Id.* at ¶¶ 4, 5. Ms. Skinner discussed her own complaints and the complaints made by other staff members with Mr. Fritzmeier in November, 1991.

Mr. Grant and Mr. Fritzmeier also had difficulty working with Ms. Robinson. Grant Affidavit, ¶ 2; Fritzmeier Affidavit, ¶ 3. Mr.

Fritzmeier complains that "she failed to properly communicate with me and would misunderstand the manner in which I wanted something done." Fritzmeier Affidavit, ¶ 3. He tried unsuccessfully to remedy the problems by meeting with Plaintiff and explaining the importance of following instructions. "Over time, I became frustrated because she did not try to correct the problem or even admit that she needed to make changes." *Id.* Also, during mid-to-late 1991, several other employees complained to Mr. Fritzmeier that Plaintiff was "abrasive, uncooperative, and condescending." *Id.* at ¶ 4. Mr. Fritzmeier personally observed Plaintiff's abrupt and uncooperative behavior with her co-workers. *Id.* at ¶ 6.

Mr. Fritzmeier testified that he spoke with Ms. Robinson on "several occasions" about the negative impressions she created. "During these meetings she was antagonistic and would· not accept responsibility for her actions." *Id.* at ¶ 7. Finally, as Mr. Fritzmeier's perception of the severity of the problem increased, he asked Diane Skinner to speak to Plaintiff. "Ms. Skinner's efforts were met with accusations of incompetence by Ms. Robinson. I was also aware that she confronted other employees about what Ms. Skinner said and was upsetting them." *Id.* at 8.

Ms. Skinner says that Mr. Fritzmeier asked her to counsel Ms. Robinson beginning in April, 1992, following another series of complaints from Plaintiff's peers. Skinner Affidavit, ¶ 6. "In April, I had at least four counseling sessions with Ms. Robinson. During these sessions, she attacked me and the other coordinators personally. She called me incompetent and also stated this to Mr. Fritzmeier." *Id.* at ¶ 7. According to Ms. Skinner, Plaintiff accused the other coordinators of lying, stating that "other people needed to change their attitudes and accept her for who she was." *Id.*

In late April, 1992, following these unsuccessful counseling sessions, Mr. Fritzmeier met with Mr. Grant. Together, they reviewed Plaintiff's unsatisfactory performance and decided to place Ms. Robinson on probation if she indicated a willingness to improve, or to fire her if she did not. Because travel plans required both men to be absent during May, they agreed to meet with Plaintiff on June 9, 1992. Fritzmeier Affidavit, ¶ 9; Skinner Affidavit, ¶ 9; Grant Affidavit, ¶ 3.

On June 9, Plaintiff delivered the following letter to Mr. Fritzmeier from her attorney:

Dear Mr. Fritzmeier:

I represent Ms. Robinson, a loyal and successful employee since 1983 [sic]. *Certain events have led her to believe she is being discriminated against on account of her age.* She has been harassed and threatened, and has been subjected to an extremely hostile work environment for no apparent non-discriminatory reason.

Mr. [sic] Robinson is a team player; she has no desire to litigate with the Company. She would like to resolve what has become an unconscionable situation. *She would be willing to waive any claims against the Company in consideration of six months severance pay, four days vacation pay, attorneys fees, and a good reference.*

This offer is extended through close of business. . . . I look forward to an amicable resolution of these problems.

Letter, attached as Exh. A to Fritzmeier Affidavit.

This was the first notice Mr. Fritzmeier had that Plaintiff alleged age discrimination as the source of her problems: "She had never once mentioned that she thought the other employees were upset with her because of her age or that she felt she was being discriminated against." Fritzmeier Affidavit, ¶ 10. To Mr. Fritzmeier, the letter represented a resignation and a demand for a severance package. "Upon reading the letter, I understood Ms. Robinson's actions as a total unwillingness to change." *Id.*

The meeting was postponed until the next day. Mr. Fritzmeier and Mr. Grant conferred and decided to go forward with the original plan "to either place Ms. Robinson on probation or terminate her." Grant Affidavit, ¶ 4. Prior to the meeting, both Mr. Fritzmeier and Mr. Grant were aware that Plaintiff had already cleared out her desk "and was apparently going to leave the company in any event." Fritzmeier Affidavit, ¶ 11; Grant Affidavit, ¶ 6. Both men met

with Plaintiff and say she indicated to them that "she was not willing to change," Fritzmeier Affidavit, ¶ 11, and "she did not believe we could work things out." Grant Affidavit, ¶ 5. Mr. Fritzmeier fired Ms. Robinson on June 10, 1992 and gave her 30 days severance pay. Plaintiff was replaced by Cheryl Caudy, age 40. Skinner Affidavit, ¶ 11; Skinner Depo., pp. 95–96.

Mr. Fritzmeier, Mr. Grant, and Ms. Skinner swear that the decision to terminate Ms. Robinson had nothing to do with her age or with the discrimination allegations contained in the letter from her attorney. "I would have made the same decision, and was prepared to make the same decision, for any other employee who exhibited this behavior." Fritzmeier Affidavit, ¶ 11.

Plaintiff disagrees with many of the detailed accusations regarding her behavior. She says, for instance, that "she only informed Mr. Fritzmeier that Ms. Skinner was unqualified for the position of Director of Human Resources on two occasions and not 'repeatedly'." Plaintiff's Statement of Material Facts, ¶ 5. Plaintiff says Mr. Fritzmeier did not speak to her on a "number of occasions" in September of 1991, but only once. *Id.* at ¶ 6. Plaintiff also denies that Ms. Skinner spoke to Mr. Fritzmeier in *early* November about Plaintiff's behavior, because the particular incident Ms. Skinner complained about happened in *late* November. *Id.* at ¶ 7. Plaintiff further denies being condescending or arrogant in general.

According to Ms. Robinson, Mr. Fritzmeier was not "frustrated" during their November meeting, nor was she antagonistic. *Id.* at ¶ 8. Plaintiff maintains that many of the acts Ms. Skinner holds against her were misperceived or were not her fault. "Plaintiff denies that she did in fact treat the coordinators in an abrupt and condescending manner, that she failed to complete her responsibilities in time...." *Id.* at ¶ 13. Plaintiff admits becoming "a little confronta-

tional" toward Ms. Skinner, but only after she was falsely accused. *Id.* at ¶ 16. She denies the statement that she "verbally attacked Ms. Skinner" in an April meeting with Mr. Fritzmeier and says that she "merely defended herself." *Id.* at ¶ 17. She denies being verbally abusive toward the receptionist, Ms. Hart, during a meeting with Ms. Hart, Ms. Skinner, and Mr. Fritzmeier, and contends that "she was simply trying to get Ms. Hart to repeat to the meeting the statement which she had made to her outside of the meeting." *Id.* at ¶ 19. Plaintiff's deposition reveals that following the problem with Ms. Hart, Mr. Fritzmeier stated to Plaintiff that her personality "stunk." According to Ms. Robinson, he also said that she was not a "team player" and did not know how to communicate. Plaintiff's Depo., p. 220; EEOC Affidavit, p. 2, attached as Exh. D–11 to Plaintiff's Depo.[1]

Plaintiff denies that she was ever given fair warning of the problems for which she was allegedly fired. "Plaintiff states that the only counseling that had been given to her was by Mr. Fritzmeier and it was of a very limited nature and had been 'fruitless' only because Mr. Fritzmeier had failed to indicate how she could improve...." *Id.* at ¶ 20. She denies that she was given any opportunity "to express her willingness to change or to continue in the employment under any condition at the meetings that she had with Mr. Fritzmeier on June 9 and June 10, 1992." *Id.* Ms. Robinson claims that she "gave no signal or indication" that she intended to leave the company, *id.* at ¶ 23, and that her attorney's letter "constituted an offer to waive any claims she had for certain identified considerations, but the same did not constitute a 'severance package'." *Id.* at ¶ 21. Plaintiff also contends that Cheryl Caudy was not hired as her replacement, but filled a "new position" as secretary for Mr. Fritzmeier, Mr. Grant, and Ms. Skinner. *Id.* at ¶ 28.

---

1. Plaintiff subsequently wrote Mr. Fritzmeier and Ms. Skinner a memo, dated April 24, 1992, and entitled "Events of Past 3 Weeks." In pertinent part, she said:

 I understand that both of you and others who wish to remain anonymous feel I need improvement in the following areas.

 Communication
 Being a "Team Player"
 Personality
 Plaintiff's Depo., attached as Exh. D–7.

## IV. APPLICABLE FEDERAL LAW

 The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's age. 29 U.S.C. § 623(a). In age discrimination cases, the plaintiff bears the ultimate burden of proving that age was the determinative factor in the employer's termination decision. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Courts have fashioned special rules of proof, shifting the burden of production to the defendant once plaintiff establishes a prima facie case. In the absence of direct proof, establishing a prima facie case of age discrimination requires an initial showing that plaintiff: (1) was within the protected age group, *i.e.,* over 39 years old; (2) was discharged; (3) was replaced with a person outside the protected group; and (4) was qualified for the job. *See Castle v. Sangamo Weston Inc.,* 837 F.2d 1550, 1558 (11th Cir.1988) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). If plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating plaintiff. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988). If the employer produces legitimate reasons for the discharge, the burden shifts back to the plaintiff to prove that the employer's asserted reasons are pretextual. *Id.*

 Retaliatory employment practices are unlawful under Title VII. *See* 42 U.S.C. § 2000e–3(a). Simply put, an employer cannot retaliate against an employee because she threatens to bring charges of illegal discrimination. A plaintiff establishes a prima facie case under Title VII "by showing that she exercised her protected rights, an adverse employment action occurred, and the adverse action was causally related to the

plaintiff's protected activities." *EEOC v. Reichhold Chems., Inc.,* 988 F.2d 1564, 1571 (11th Cir.1993). It is important to note that this circuit interprets the causation requirement broadly: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Id.* at 1571–72. "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *see also Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 920 (11th Cir.1993) (prima facie showing of causal connection at summary judgment stage does not require proof by a preponderance but merely that the employee's activity and the employer's action were not wholly unrelated).

 Although the prima facie elements are different in a retaliatory action case, the burden of proof under Title VII is governed by the framework established in *McDonnell Douglas.* When plaintiff establishes a prima facie case, the burden of production then shifts to defendant to show nonretaliatory reasons for the adverse employment action. The plaintiff can refute the employer's reasons by proving they are pretextual. In retaliation cases as in discrimination cases, the burden of production shifts but the burden of persuasion remains with the plaintiff. *Reichhold Chemicals,* 988 F.2d at 1572.

## V. DISCUSSION

 The legal dispute in this case focuses on the legitimacy of the employer's reasons for firing Ms. Robinson and Plaintiff's burden of showing pretext.[2] To rebut Plaintiff's prima facie case, Defendant's three executives produce numerous accounts of

---

**2.** Plaintiff acknowledges that she has only circumstantial evidence of age discrimination. Plaintiff's Brief in Opposition [# 16], p. 5. Therefore, Plaintiff must establish a prima facie case in accordance with the four-pronged *McDonnell Douglas* test.

Plaintiff was replaced by Cheryl Caudy, a person 40 years old who is within the protected age group. Under a mechanical application of the *McDonnell Douglas* test, Plaintiff has failed to

satisfy the third requirement, that she was replaced by a person outside the protected group. However, the Court is well aware of this circuit's "repeated eschewal of an overly strict formulation of the elements of a prima facie case, especially in age discrimination cases." *Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir.1989). Thus, the third prong of the test is treated flexibly and does not bar Plaintiff's establishing a prima facie case in this instance.

Plaintiff's bad behavior and poor job performance. Defendant offers extensive and detailed testimony supporting its assertion that Plaintiff was a disruptive presence in the office and generally performed below the reasonable expectations of her superiors. Although Plaintiff ultimately denies *fault* for the repeated confrontations with peers and for her failure to improve her poor work performance, the majority of the facts pertaining to the unacceptable quality of her employment service remain uncontested. The Court finds that Defendant's ability to point to many specific incidents of intolerable conduct over a period of time demonstrates legitimate, nondiscriminatory reasons to fire Ms. Robinson.

■■■ The Court also finds that Plaintiff has failed to prove that the reasons Defendant offers to justify her discharge are a pretext for age discrimination. The personal observations of Plaintiff's conduct related by Ms. Skinner, Mr. Fritzmeier and Mr. Grant stand unrefuted as evidence of her employer's legitimate dissatisfaction with her work. Plaintiff claims that there is disputed evidence as to whether her conduct "was in fact harassing and disruptive," but offers only her own affidavit to create the dispute: "While I cannot state for a certainty that Lloyd Fritzmeier or Diane Skinner did not receive complaints from employees that I was abrasive, uncooperative, arrogant, condescending or unyielding, I can state that I do not feel I was any of these things...." Plaintiff's Affidavit, ¶ 15; *see* Plaintiff's Brief in Opposition [# 16], p. 8. Plaintiff has introduced no evidence tending to show that she was fired for any reasons other than those stated by Skinner, Fritzmeier, and Grant, or that their articulated concerns were less than genuine. "[Plaintiff's] conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [the employer] has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987). "Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that

fact and award summary judgment to the employer." *Id.* In this case, the Court concludes that Plaintiff's unsupported affidavit is not sufficiently probative of pretext to avoid summary judgment.

■■ Plaintiff also alleges that her termination was in retaliation for her letter stating that she believed she was being discriminated against because of her age. The parties in this case do not dispute the first two elements of the prima facie case for retaliation—that Plaintiff's allegation of age discrimination contained in her letter of June 9 constituted a protected expression, and that an adverse employment action followed. Defendant, however, contends that Plaintiff's discharge was not causally connected to her discrimination complaint.

The evidence shows that Defendant learned of the discrimination charge on June 9 and fired Ms. Robinson on June 10. In many cases, this coincidence alone would sufficiently forge the causal link for summary judgment purposes. *See, e.g., Goldsmith*, 996 F.2d at 1163–64 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (evidence that employer knew of protected activity, combined with proximity in time of protected activity and retaliatory action, is sufficient to establish prima facie case of retaliation)). In this case, however, the Court finds the record insufficient to establish that Ms. Robinson's termination was in any way related to Defendant's knowledge of Plaintiff's discrimination complaint.

Uncontroverted testimony proves that Plaintiff was warned over a period of time that her behavior and job performance was unacceptable. Numerous incidents personally observed by the company's managers, as well as continuing complaints by other employees, lead Mr. Fritzmeier and Mr. Grant to decide over a month prior to Plaintiff's termination on the conditions for her possible probation or discharge. After receiving her letter, Mr. Fritzmeier and Mr. Grant followed their original plan, testifying that Plaintiff's June 10 refusal to improve her performance problems resulted in her dismissal.

Even though Defendant knew at the time of discharge that Plaintiff might pursue an age discrimination claim, this circuit does not hold that the employer's mere knowledge of a potential discrimination charge is enough. *Accord Mesnick v. General Elec. Co.*, 950 F.2d 816 (1st Cir.1991). The employer's legitimate reasons for adverse action can justify an employee's termination without the company's knowledge of a pending discrimination claim automatically providing the causal link for a subsequent retaliation suit. "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint." *Id.* at 828; *see also Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir.1988) ("Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers."). Viewing all evidence in a light most favorable to Plaintiff, the Court finds that the record does not support Plaintiff's contention that the protected expression and the adverse employment action were causally related.

Moreover, assuming *arguendo* that Plaintiff established a prima facie case of retaliation, and given Defendant's vigorous assertion of legitimate, nondiscriminatory reasons for firing Ms. Robinson, the success of Plaintiff's retaliation claim hinges on her proof of pretext. As noted above, Plaintiff failed to present any evidence that Defendant's articulated reasons were in fact a pretext for discrimination. Undisputed facts show that Defendant sought to improve Ms. Robinson's conduct during a period when she persisted in acting unreasonably. When events culminated in late April, the record suggests that continuing to endure her disruptive behavior might have been more damaging to Defendant's business than risking a discrimination suit.

Because Plaintiff has not carried her burden of proof in showing that Defendant's reasons for firing her were pretextual, summary judgment is proper in this case. Accordingly, Defendant's motion is **GRANTED.**

**SO ORDERED.**