Bernardino ("Bernie") **RODRIGUEZ, Plaintiff,**

v.

**CITY OF HIALEAH, Defendant.**

No. 88–429–Civ.

United States District Court, S.D. Florida, Miami Division.

April 28, 1989.

Mark D. Swanson, Miami, Fla., for plaintiff.

Joseph H. Serota, Edward Guedes, Fine Jacobson Schwartz Nash Block & England, Miami, Fla., for defendant.

## ORDER GRANTING DEFENDANT'S MOTIONS FOR DIRECTED VERDICT AND INVOLUNTARY DISMISSAL

NESBITT, District Judge.

This cause came before this Court for trial by jury on Count I of the First Amended Complaint alleging a violation of 42 U.S.C. § 1981, and for trial by the Court on Count II, alleging a violation of 42 U.S.C. § 2000e et seq. (Title VII discrimination). Plaintiff Bernardino Rodriguez rested after two and one-half days of the presentation of testimony and other evidence, at which time the Defendant, City of Hialeah ("City"), moved for a directed verdict as to Count I and an involuntary dismissal as to Count II.

Rodriguez filed a six-count amended complaint on May 9, 1988, contending that he was terminated from the Hialeah Police Department because of accent discrimination.[1]

### FINDINGS OF FACT

Rodriguez was appointed to the Hialeah police academy program effective September 24, 1985 and was released from the City police department in June 1986. While at the police academy, Rodriguez was the only trainee who failed the driving test twice, and he also failed report writing, receiving the lowest grade of all City recruits. Further, Rodriguez was a nervous individual who had difficulty dealing with stress. During inspections, he dropped his weapon, damaging it; on another occasion, he received a reprimand for putting his finger on the trigger during an inspection. Rodriguez graduated from the police academy number 17 in a class of 30.

Throughout the field training program with the City, Rodriguez' instructors prepared numerous written evaluations of the plaintiff on a daily, weekly and "end-of-phase" basis which delineated significant problems in the areas of written and oral communications, driving skills, and the ability to accept constructive criticism. Rodriguez reviewed nearly every one of these written evaluations and failed to make any written objections to them.

Among his police instructors were two Hispanic officers who prepared evaluations and comments regarding Rodriguez' deficiencies in a fashion similar to that of the non-Hispanic police instructors. Rodriguez testified that Officer Carlos Zayas, who made numerous notations of deficiencies in Rodriguez' performance, had not discriminated against Rodriguez. Rodriguez also admitted that the three problem areas cited by Officer Zayas, who noted numerous deficiencies in Rodriguez' performance, had not discriminated against Rodriguez. Rodriguez also conceded that the three problem areas noted by Officer Zayas in his "end-of-phase evaluation" were the same areas mentioned when Major Manuel Martin advised Rodriguez that he would not be hired as a permanent police officer.

On June 6, 1986, while riding with Officer John Richardson, Rodriguez made a radio transmission which could not be understood by the dispatchers or by the desk sergeant, Sgt. David McElligat. After listening to the transmission described by Dispatcher Mixon as "jargon," Sgt. McElligat called Officer Richardson to advise him of the problems with Rodriguez' transmission. Rodriguez testified that Sgt. McElligat also called him at this time complaining about the transmission. Rodriguez claims that during this conversation Sgt. McElligat told him to "speak English like in Queens, New Jersey, not Little Havana." Sgt. McElligat testified that he could not recall ever having talked to Rod-

---

1. On February 21, 1989, this Court entered an Order of Dismissal against seven individual defendants in this case, pursuant to Plaintiff's February 8, 1989 stipulation of voluntary dismissal. Further, on March 27, 1989, the Court granted Defendant's motion for partial summary judgment with respect to Counts III and IV, and noted that Counts V and VI were conceded by Plaintiff to be moot in light of Plaintiff's voluntary dismissal of the individual defendants.

riguez. Sgt. McElligat was a desk sergeant in charge of communications, and he had nothing whatsoever to do with hiring and had no decision-making authority in this regard. Furthermore, there was no evidence that this alleged statement was communicated to anyone who did have hiring or decision-making authority with regard to Rodriguez.

The memorandum prepared by Sgt. McElligat relating to this transmission merely confirms that there was difficulty in understanding the transmission and that the question of "accent" created only minor difficulties. The memorandum stated that the main problem was the word order which made the transmission unintelligible. There was no mention of Sgt. McElligat's alleged statement.

Rodriguez received extensive training, including remedial driving instruction and an "extended phase" to assist him in overcoming his problems. However, during the "extended phase," Rodriguez demonstrated erratic and unprofessional conduct towards a prisoner. He also incorrectly prepared an arrest report and then talked back to his superior, Sgt. Tash, who was trying to counsel him on his problems. At the end of this particularly troublesome day, Major Manuel Martin, a Hispanic–American, made a decision based upon Rodriguez' entire training record that the City would not offer Rodriguez permanent employment and that his police powers would be removed.

The overwhelming evidence admitted to be true and accurate by Rodriguez established that Rodriguez experienced significant problems with regard to oral and written communications and driving. The evidence supported the City's claim that Rodriguez was not able to function as an independent officer as required in the "silent-partner phase" of his training. As a result, he was given an "extended phase," during which time the decision not to hire him was made. The evidence also demonstrated that neither Rodriguez' behavior nor his performance was predictable in the training program.

Sgt. Ellen O'Riordan, who was in charge of the field training program, testified that she counseled Rodriguez on numerous occasions, observed his driving firsthand, discussed his performance with the field training instructors, and reviewed all written reports regarding his performance. Sgt. O'Riordan testified that, based on Rodriguez' performance in the City's training program, he was not qualified to be a police officer. Officer Peiser, who also instructed Rodriguez, testified similarly. Further, many of the officers testified that they liked Rodriguez and that they were hoping he would improve his performance so that he could become a permanent police officer. However, they pointed out that while Rodriguez had the "desire" to be a qualified officer, he did not have the "ability" to be one.

Rodriguez presented no evidence other than his own opinion establishing that he was qualified for a job as a permanent police officer with the City. At best, Rodriguez demonstrated that he received acceptable ratings in most areas. However, Rodriguez did not carry his burden of showing that he was qualified in the areas which Major Martin cited when he advised Rodriguez of the City's decision not to hire him as a permanent police officer. Sgt. O'Riordan testified that a trainee must be acceptable in all police skills, not just the majority of them.

Rodriguez established no evidence of any kind demonstrating discriminatory intent by the City. Nor did Rodriguez set forth any evidence which, in a light most favorable to Rodriguez, could establish that the City's motivating factor in deciding not to hire Rodriguez was based on the fact that Rodriguez is Hispanic or that he has an accent. Moreover, Rodriguez presented no credible evidence of disproportionate discipline in his attempt to show that the City discriminated against him. He presented no evidence involving individuals similarly situated and relating to incidents similar in nature so as to establish that Rodriguez was treated differently than other probationary employees.

**1428**

## CONCLUSIONS OF LAW

 To state a prima facie case of racial discrimination,[2] a plaintiff must show that: (i) he belongs to a racial minority; (ii) he applied for and was qualified for the job for which employer was seeking applicants; (iii) despite his qualifications, he was rejected; and (iv) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the plaintiff proves a prima facie case, the employer then has the burden to articulate a legitimate, non-discriminatory reason for its actions with regard to the employee. *Id.* Once the employer provides such a reason, the plaintiff must prove that the reason given was merely a pretext for the employer's actions in order to prevail on the claim of discrimination. *Id.* at 804, 93 S.Ct. at 1825.

Additionally, the plaintiff must show the existence of discriminatory intent, which is totally lacking in the instant case. The Eleventh Circuit recently held in *Rollins v. State of Florida, Department of Law Enforcement*, 868 F.2d 397, 403 (11th Cir. 1989), that:

> If the defendant successfully rebuts the plaintiff's prima facie case, the plaintiff must carry the ultimate burden of establishing by a preponderance of the evidence that discriminatory intent motivated the denial of the plaintiff's promotion.

Where a claim of discrimination is based upon mere statements, not constituting sufficient evidence of racial discrimination to present a genuine issue of fact for the jury, a directed verdict is proper. *Price v. Lockheed Space Operations Co.*, 856 F.2d 1503 (11th Cir.1988). Moreover, where allegations of racially motivated statements are insufficient to state a prima facie case of racial discrimination, dismissal of the complaint at the pleading stage is appropriate. *Terry v. Cook*, 866 F.2d 373 (11th Cir.1989).

 Rodriguez has initially failed to establish a prima facie case of discrimination. Rodriguez did not establish that he was qualified for the position of permanent police officer with the City, based on the evidence presented taken in a light most favorable to Rodriguez. In fact, through cross examination, Rodriguez admitted the existence of such problems as communication and driving skills. Additionally, he failed to rebut or contradict the opinions of Sgt. O'Riordan and Officer Peiser that Rodriguez was not qualified. Finally, Rodriguez failed to establish that the City continued to seek applicants for the same position of permanent officer from persons with the same qualifications as Rodriguez.

Even if a prima facie case had been established, Rodriguez failed, as a matter of law, to establish that the City's legitimate non-discriminatory reasons for its decision not to hire Rodriguez constituted a pretext. On the contrary, Rodriguez' own testimony clearly established that the reasons for the City's decision not to hire him on a permanent basis were legitimate and not a pretext. Rodriguez' own testimony demonstrates that his allegation of intentional discrimination is based purely on speculation, conjecture, and surmise. The entry of summary judgment is appropriate where an employer presents legitimate non-discriminatory reasons for its actions and the plaintiff fails to rebut such evidence. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103 (1st Cir.1988) (summary judgment granted on § 1981 and Title VII claims); *Steckl v. Motorola*, 703 F.2d 392 (9th Cir. 1983). In two and one-half days of trial, Rodriguez presented no evidence of discriminatory intent or disproportionate discipline. *See, e.g., Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 69 (6th Cir.1985) ("different treatment does not constitute disparate treatment absent evidence of a disparate comparison to a similarly situated co-worker or evidence supporting an allegation of illegitimate reasons for employer's actions"); *Boner v. Board of Commissioners of Little Rock*

---

**2.** Although procedures under 42 U.S.C. § 1981 and Title VII differ, both statutes require proof of the same elements if the plaintiff alleges purposeful discrimination. *Cuffy v. Texaco Refining & Marketing Co.*, 684 F.Supp. 87, 92 (D.Del.1988).

*Municipal Water Works,* 674 F.2d 693, 697 (8th Cir.1982) (in order to determine whether employees are similarly situated, court must look to whether the employees are accused of the same offense but disciplined in different ways). Rodriguez simply failed to show disparate discipline or pretext.

In *Fragante v. City & County of Honolulu,* 49 Fair Employment Practice Cases 437 (9th Cir.1989), the Court held that a prospective employee's accent had a deleterious effect on his job performance, justifying the employer's decision not to hire him. Further, the Court stressed that the plaintiff was not hired because of the poor *effect* his accent had on his communication skills, not merely because he had such an accent. Here, Rodriguez has not even shown that his accent played any part in the hiring process. Rather, the evidence demonstrates that Plaintiff was not retained for a myriad of legitimate reasons. In any event, assuming, *arguendo,* that Rodriguez made a prima facie case, he failed to show that the City's reasons for termination were pretexual, or that he was fired merely because he had an accent.

■ With respect to the alleged statement that Rodriguez should "speak English like they do in Queens, New Jersey, not Little Havana," there is no evidence that such a statement, if in fact made, was made by an individual involved in the hiring process. Nor was there evidence to demonstrate that the comment was communicated to anyone who was in a supervisory position with regard to hiring. Mere allegations which may appear racially motivated on their face do not sufficiently establish discriminatory intent so as to permit the issue to go to a jury. *See, e.g., Terry,* 866 F.2d at 379 (bare allegations that the employer "didn't care whether he hired any niggers on his staff or not" was insufficient as a matter of law to state a prima facie case of racial discrimination). *Cf. Bennett v. New York City Dept. of Corrections,* 705 F.Supp. 979, 983 (S.D.N.Y. 1989) (black correction officer could not maintain Title VII and § 1981 claims arising out of racially discriminatory working environment despite incident during which colleague yelled racial slurs at her). Additionally, in *Price* and *Terry* the alleged statements were made by individuals involved in the hiring process. The alleged statement in the case at bar was not made by anyone with hiring authority.

In short, Rodriguez has failed to establish a prima facie case and, even if a prima facie case had been established, Rodriguez failed to present any evidence demonstrating that the City's reasons for its actions were no more than a pretext. Where there is but one reasonable conclusion based on the evidence and testimony presented, a directed verdict is warranted. *Pelletier v. Stuart–James Company,* 863 F.2d 1550, 1554 (11th Cir.1989). *See also Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989) ("a mere scintilla of evidence does not establish a jury question.... Rather, there must be a substantial conflict of evidence to support a jury question.") (footnote omitted). With respect to Count II, the Court under Rule 41(b) is free to weigh the evidence and pass on the credibility of witnesses. *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138, 144 n. 8 (5th Cir.1979); *Continental Casualty Co. v. DLH Services, Inc.,* 752 F.2d 353, 355–56 (8th Cir.1985).

Accordingly, it is

ORDERED and ADJUDGED that:

1. The City's Motion for Directed Verdict with regard to Count I of the First Amended Complaint is hereby GRANTED.

2. The City's Motion for Involuntary Dismissal with regard to Count II of the First Amended Complaint is hereby GRANTED.

This cause is hereby DISMISSED with prejudice in accordance with this ruling. A separate Final Judgment will be entered this day. The Court reserves jurisdiction to award costs and attorney's fees.

DONE and ORDERED.