Rose AVRIL, Plaintiff,

v.

The VILLAGE SOUTH INC., d/b/a
The Village, Defendant.

No. 95–1464–CIV.

United States District Court,
S.D. Florida.

May 23, 1996.

William G. Bell, Jr., Sharon L. Blake, Miami, FL, for plaintiff.

Terence G. Connor, Christopher Henry LaRosa, Morgan Lewis & Bockius LLP, Miami, FL, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

GARBER, United States Magistrate Judge.

THIS CAUSE is before the Court on Defendant The Village South, Inc.'s Motion for Summary Judgment filed on January 23, 1996 (DE 26). On September 22, 1995, the parties consented to jurisdiction before the undersigned United States Magistrate Judge.

### BACKGROUND

Defendant Village South (the "Village" or "Defendant") hired Plaintiff Rose Avril ("Avril" or "Plaintiff"), a black woman of Haitian national origin, on September 11, 1981 as a bookkeeper. The Village is a charitable drug and alcohol rehabilitation center. Plaintiff worked at the Village for thirteen years and was discharged on December 12, 1994. During that time, the Village grew from a small agency to one employing nearly 200 people and treating approximately 229 substance-addicted clients.

Plaintiff worked in various clerical positions which included working on the payroll and accounts receivable. From approximately 1992–1994, she had the primary responsibility for generating the Village payroll on a bi-weekly basis. In February 1991, the Village hired Gregory Brown as its Controller. As Controller, Mr. Brown headed the accounting department, including supervising the payroll. In 1992, the Village established a tax deferred retirement system under section 403(b) of the Internal Revenue Code under which employees could authorize the Village to deduct specified amounts from their paychecks to invest. Along with her

other payroll functions, Plaintiff was responsible for deducting these amounts. Shortly after implementing this plan, Mr. Brown received numerous complaints indirectly from the plan administrator, and directly from the employees that proper amounts had not been deducted from their paychecks. After Mr. Brown investigated each complaint and determined that several errors were made by Plaintiff, he met with Plaintiff, advised her of the mistakes, and asked her not to repeat them in the future.

Mr. Brown contends that despite his efforts, Plaintiff continued to make an increasing number of errors throughout 1993. In January 1994, Mr. Brown prepared his annual performance evaluation of Plaintiff. On a scale of 1 to 7, Mr. Brown rated Plaintiff's quality of work as a 2, work habits and dependability as a 2, and in most other categories, Plaintiff was given a 3. In the addendum to this evaluation, Mr. Brown noted that Plaintiff had not continued to perform her job responsibilities at the level she had in the prior year. He stated that "the lack of accuracy in her work has been a continuing problem during the past year. There have been numerous complaints regarding miscalculations of payroll and her forgetting to perform payroll related functions.... Many of Rose's co-workers and other employees have noted dissatisfaction with her attitude and lack of willingness to help." (DE 58, Ex. 3). In a memo dated January 20, 1994 to Plaintiff, Mr. Brown detailed 13 of Plaintiff's errors. Mr. Brown met with Plaintiff to discuss the evaluation, and although she understood the criticisms noted, she denied responsibility for many errors and refused to sign the evaluation. (DE 58, Ex. 3). Mr. Brown further noted that the most serious issue to be addressed was Plaintiff's breach of confidentiality when she informed employees of pay raises prior to their supervisors' approval. As a result of these events, Plaintiff was put on 90 days probation.

The Village took steps to assist Plaintiff's performance and on March 1, 1994, transferred her to a different department, the Human Resources Department, headed by Ms. Cindy Meyer–Oliver. In addition, the Village transferred the payroll function to this department. Moreover, Plaintiff was removed from probation so that she could begin her new position with a clean slate. In a memo dated March 24, 1994, Ms. Meyer–Oliver advised Plaintiff of numerous payroll mistakes that she had made since she had started in Human Resources. (DE 58, Ex. 4). Ms. Meyer–Oliver discussed these problems with Plaintiff in a meeting, and Plaintiff acknowledged that she understood the explanation of the errors, however, she denied responsibility and refused to sign the memo. In addition, on April 11, 1994, Plaintiff met with Matthew Gissen, Executive Director, to discuss the problems and again she refused to sign the memo.

In a memo to Mr. Gissen dated July 11, 1994, Plaintiff requested that they have a meeting with Ms. Meyer–Oliver to discuss how her performance was progressing, even though Ms. Meyer–Oliver told Plaintiff she was doing well. (DE 58, Ex. 5). In that memo, Plaintiff claims that she had tried hard to do her job, but that there existed too much prejudice and discrimination against blacks and Haitians. Plaintiff claimed that Mr. Brown had harassed her and made up lies about her performance. Ms. Meyer–Oliver responded to Mr. Gissen in a memo dated July 14, 1994 that she did not believe that Mr. Brown's evaluation of Plaintiff had anything to do with prejudice, discrimination, or Plaintiff's pregnancy, and that it was solely based on Plaintiff's decline in work performance. (DE 58, Ex. 5).

During the period from April to June 1994, Plaintiff's performance improved. In a memo to Mr. Gissen dated July 14, 1994, Ms. Meyer–Oliver noted that she was satisfied with Plaintiff's performance at that time because the payroll errors that were previously documented had not been occurring. (DE 58, Ex. 5). However, by December 1994, according to Ms. Meyer–Oliver, Plaintiff's performance had deteriorated. On December 5, 1994, Ms. Meyer–Oliver completed her annual evaluation of Plaintiff which noted that while Plaintiff is "generally thorough and produces good quality work, she has sometimes shown a lack of attention to detail and accuracy in her work." (DE 58, Ex. 6).

Ms. Meyer–Oliver recommended improvement in several areas including cooperation with co-workers. Again, the evaluation was discussed with Plaintiff, however, she refused to sign it. Ms. Meyer–Oliver noted on the evaluation that Plaintiff claimed that she was being discriminated against, however she refused to explain to Ms. Meyer–Oliver what specifically she felt was wrong or how things could be improved.

In addition, in November 1994, Ms. Meyer–Oliver received a copy of a complaint filed by an ex-employee, Ms. Jenkins, with the Florida Department of Health and Human Services. This complaint contained information such as the dates of employment and home phone numbers of two employees who left the Village after Ms. Jenkins. Ms. Meyer–Oliver testified at a hearing before the Florida Department of Labor and Employment Security and Employment Compensation Appeals Bureau that she and Plaintiff were the only two individuals with access to that information, which was confidential according to Village policy. (DE 58, Tab C). Ms. Meyer–Oliver accused Plaintiff of a breach of confidentiality by revealing that information and Plaintiff denied that she supplied Ms. Jenkins with that information.

By December 9, 1994, Ms. Meyer–Oliver determined that despite repeated counseling and inducement to improve, there was little prospect that Plaintiff's performance would improve in the future. Because of these problems and because of the breach of confidentiality which she attributed to Plaintiff, Ms. Meyer–Oliver recommended to her supervisors Mr. Gissen and Mr. Steven Lang, that Plaintiff be discharged. On December 12, 1994, Mr. Gissen made the decision to discharge Plaintiff, and along with Mr. Lang and Ms. Meyer–Oliver, met with Plaintiff, reviewed her performance history, and explained to her the reasons for her dismissal.

Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") pursuant to § 706(f) of Title VII (the "Discrimination Charge"), alleging that the Village discharged her from her employment with the

agency on the basis of her race and national origin. On May 11, 1995, after the EEOC investigated Plaintiff's Discrimination Charge and determined that there was no reasonable cause to believe a violation of Title VII had occurred, the EEOC issued to Plaintiff a statutory determination and notice of right to sue. On March 21, 1995, Plaintiff filed another charge of discrimination with the EEOC (the "Retaliation Charge"), alleging that the Village discharged her from her employment for assisting former black employees in filing grievances against the Village for racial discrimination.[1]

Plaintiff filed a complaint in this Court on July 7, 1995 alleging both the Discrimination Charge and the Retaliation Charge. On January 23, 1996, Defendant filed a motion for summary judgment as to all of Plaintiff's claims. Defendant claims that "the uncontroverted record evidence indicates that the Village's decision to discharge Avril was motivated by its view that she had failed to adequately perform her duties as a payroll clerk, not by race or national origin bias or by a desire to retaliate against her for assisting other employees to file EEOC charges." (DE 27 at 2). Plaintiff argues that material facts are in dispute as to whether Plaintiff was discharged because she made too many payroll errors or whether such reason is a pretext and that she was terminated because she is black and of Haitian national origin. A hearing was held on said motions before the undersigned on May 10, 1996.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of persuasion to demonstrate that there is no genuine issue of material fact. *Celotex Corpora-*

---

1. As of the time of the filing of this Motion for Summary Judgement, the EEOC had not yet issued a final determination regarding the merits of that charge.

*tion v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial burden of demonstrating that there is no genuine issue of material fact, the burden shifts to the nonmoving party to provide evidence from the discovery devices listed in Rule 56(c) other than pleadings, demonstrating that a genuine issue of material fact exists. *Id.* The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only facts from which a reasonable jury could return a verdict for the nonmoving party will preclude the entry of summary judgment on a properly supported motion for summary judgment. *Id.*

For issues on which Defendant would not have the burden of proof at trial, Defendant, as the moving party in this motion for summary judgment, must demonstrate that there is an absence of evidence supporting Plaintiff's claims. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 (11th Cir.1995); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993). In addition, Defendant "must make an affirmative showing that on all essential elements on which [it has] the burden of proof at trial, no reasonable jury could find for the non-moving party, the plaintiff in the case at bar."

## II. LEGAL STANDARD FOR DISCRIMINATION CLAIMS

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* provides that it is unlawful for an employer to:

Discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). The parties dispute the proper legal framework to apply in this suit. Plaintiff urges this Court to apply the "mixed motive" framework articulated by *Price Waterhouse v. Hopkins*, 490 U.S. 228,

247, 109 S.Ct. 1775, 1788–89, 104 L.Ed.2d 268 (1989) and modified by 42 U.S.C. § 2000e–2(m). Defendant, on the other hand, contends that this case is governed by the burden shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In this case, the Court finds that the framework set out in *McDonnell Douglas* is the appropriate standard to apply. *See, Hook v. Ernst & Young*, 28 F.3d 366, 373 (3d Cir.1994).

At trial, Plaintiff would have the burden to establish a *prima facie* case of discrimination by a preponderance of the evidence. *St. Mary's Honor Center*, 509 U.S. at 506–08, 113 S.Ct. at 2747. Thus, Plaintiff must establish that (1) she is a member of a particular race and a particular national origin; (2) she was discharged from her employment; (3) she was qualified to perform the duties of the job from which she was discharged; (4) her position was filled by a person outside of the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *St. Mary's Honor Center*, 509 U.S. at 503–06, 113 S.Ct. at 2746.

If Plaintiff can establish a *prima facie* case, then the employer defendant has the burden to articulate a legitimate, nondiscriminatory reason for its actions with regard to the employee. *Id.; Rodriguez v. City of Hialeah*, 716 F.Supp. 1425, 1428 (S.D.Fla. 1989). "Once the employer provides such a reason, the plaintiff must prove that the reason given was merely a pretext for the employer's actions in order to prevail on the claim of discrimination." *Rodriguez*, 716 F.Supp. at 1428; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. Plaintiff must prove by a preponderance of the evidence both that the employer's proffered reasons for the adverse employment action were false and that those reasons were pretext for impermissible discrimination. *St. Mary's Honor Center*, 509 U.S. at 510–12 n. 4, 513–15, 113 S.Ct. at 2749 n. 4, 2751. Thus, if the defendant has proffered a legitimate, nondiscriminatory reason for the employment decision, the ultimate question on summary judg-

ment becomes whether a reasonable juror would find that plaintiff has proven that the defendant intentionally discriminated against the plaintiff. *Id.* at 508–10, 113 S.Ct. at 2748. A plaintiff's mere belief, conjecture, or speculation that he or she was discriminated against is not sufficient to support an inference of discrimination or to satisfy the plaintiff's burden in responding to a properly supported summary judgment motion. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987).

## III. APPLICATION OF LEGAL STANDARDS

In this case, Defendant does not dispute that Plaintiff has established a *prima facie* case of discrimination. Plaintiff is a black woman of Haitian national origin; she was discharged from her employment; she was qualified to perform the duties of the job from which she was discharged; and her position was filled by a Hispanic woman, which is outside of Plaintiff's protected class. Therefore, because Plaintiff has established a *prima facie* case of discrimination by sufficient evidence, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for her discharge.

▆ The Village maintains that Plaintiff was discharged because of her failure to perform her job duties adequately and her failure to improve when counseled concerning her performance deficiencies. In fact, the record clearly shows that the Village tried everything in its power to accommodate Plaintiff and help her improve her performance, including transferring her to a new department with a new supervisor. Defendant points to Plaintiff's evaluations which reveal the decline in her work performance and to the testimony from her supervisors. The overwhelming evidence in the record does not even remotely suggest that the Village's decision to discharge Plaintiff was based on anything but her performance deficiencies. Therefore, because Defendant has proffered and supported with substantial evidence a legitimate, non-discriminatory reason for discharging Plaintiff, the burden is on Plaintiff to show that this reason was pretext for impermissible discrimination.

▆ "In some cases, the defendant's evidence of a legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by the plaintiff's *prima facie* case." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987). Such was the case in *Grigsby,* and such is the case here. "[A] plaintiff may not in all cases merely rest on the laurels of her *prima facie* case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting [Plaintiff's] *prima facie* case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by [Defendant]." *Id.*

▆ The only suggestion of discrimination in this case, is Plaintiff's conclusory allegations that she was discriminated against. Plaintiff is unable to point to any evidence of discrimination except for her belief that her evaluations were false. Plaintiff's unsupported conclusory allegations are insufficient to overcome her burden to rebut the Village's assertion of a non-discriminatory reason for the employment decision. Plaintiff has not demonstrated that the stated reason for the discharge was simply a pretext and was actually the result of intentional discrimination based on her race or national origin. "Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment." *McKeon v. Vaicaitis, Schorr, Richards, et al.,* 785 F.Supp. 965, 968 (M.D.Fla.1992) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987)). Plaintiff's conclusory allegations of discrimination, without more, "are not sufficient to raise an inference of pretext or intentional discrimination where [the Village] has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Grigsby,* at 597.

▆ In addition, the fact that Plaintiff claims that her performance was adequate and that she believes that she was not responsible for the errors in question, is irrelevant to whether Defendant held those beliefs. *See Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992) (holding that "an employees's self-serving statements

about his ability ... are insufficient to contradict an employer's negative assessment of that ability. Such statements may create a material dispute about the employee's ability but do nothing to create a dispute about the employer's honesty—do nothing, in other words, to establish that the proffered reason is a pretext for discrimination."); *Williams v. Williams Elec., Inc.,* 856 F.2d 920, 924 (7th Cir.1988) (finding that an employee's self-interested assessment of his or her abilities is insufficient to create a genuine issue of fact). "Thus, establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior." *Walker v. NationsBank of Florida N.A.,* 53 F.3d 1548, 1564 (11th Cir.1995) (Johnson, J. specially concurring). Here, there is no evidence such that a jury may conclude that the proffered reasons did not actually motivate the decision to terminate Plaintiff.

Therefore, because Plaintiff has not produced evidence upon which a reasonable jury could find that Defendant did not discharge her due to deficiencies in her work performance, and that she was discharged based on her race or national origin, or because of a desire to retaliate against her for assisting others in filing complaints for discrimination, summary judgment is appropriate.

### CONCLUSION

After careful consideration and for the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (DE 26) is **GRANTED.**

**DONE AND ORDERED.**