**EQUAL EMPLOYMENT OPPOR-TUNITY COMMISSION,**
Plaintiff–Appellant,

**Carolyn Smith, Intervenor,**

v.

**REICHHOLD CHEMICALS, INC.,**
Defendant–Appellee.

No. 91–4160.

United States Court of Appeals, Eleventh Circuit.

April 26, 1993.

Stanley Kiszkiel, Miami Dist. Office, Miami, FL, and Paul D. Ramshaw, U.S. E.E.O.C., Washington, DC, for E.E.O.C.

Michael W. Johnston, William A. Clineburg, Jr., King & Spalding, Atlanta, GA, for defendant-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and HILL, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The Equal Employment Opportunity Commission (EEOC) appeals a district court order awarding attorney's fees to Reichhold Chemicals, Inc. (RCI) as the prevailing party in a Title VII action brought by the EEOC. The original complaint alleged that RCI had violated Title VII by paying lower wages to a female employee, Carolyn Smith, than to a similarly situated male

employee.[1] The EEOC later amended its complaint to include a charge of retaliation under Title VII and the Equal Pay Act, claiming that RCI had taken punitive measures against Ms. Smith for exercising her rights.

The case was tried before a district judge. At the close of EEOC's case, RCI moved for an involuntary dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The court granted RCI's motion and ruled sua sponte that RCI was entitled to an award of attorney's fees. The EEOC moved to amend the order granting fees and the district court denied the motion. The EEOC now appeals the attorney's fees award. For the reasons discussed below, we REVERSE.

## I.

In July 1981, Carolyn Smith was hired by Alton Sermon, an RCI division controller, for the position of staff accountant at RCI's division office located in Pensacola, Florida. Smith was hired shortly after she completed her college education and earned an associate's degree in business administration and a bachelor's degree in accounting. At the time she was hired, Smith had some experience in bookkeeping and accounting and had managed a one-person credit union office for six years. Sermon offered Smith an initial salary of $15,000, the market rate for a recent graduate with Smith's skills.

Smith's duties as a staff accountant included maintaining a general ledger for the division's stumpwoods operations, preparing payroll controls for hourly wage employees and inventory controls, assisting in compiling the annual division budget, drafting monthly production and government reports, and occasionally assuming Sermon's position in his absence.

The EEOC's claim was based primarily on a comparison between Smith and a male employee, Dennis Atchison. Atchison holds two associate's degrees, one in accounting and business, and the other in literature and art, as well as a bachelor of science degree in business management. Following his college graduation, Atchison worked for the Milliken Company, a textile manufacturer, where he held various management positions. At Milliken, Atchison was earning a salary of approximately $22,000 plus a yearly bonus and RCI offered him $24,996 to change companies. In December 1981, Atchison began working as a plant accountant at RCI's Telogia, Florida plant. . His duties included accounting tasks and labor relations responsibilities. He and his clerk were responsible for accounts payable at the plant and also prepared the annual plant budget and various reports. Smith testified that approximately half of Atchison's time was spent on accounting duties similar to those that she performed. Atchison testified that only 30% of his time was occupied with accounting duties and 70% of his time was allocated to his labor relations tasks, including interpreting and administering the collective bargaining agreement and resolving grievances.

Smith contends that she was disturbed by the fact that she was earning less than Atchison when she had more responsibility. In early 1982 she repeatedly complained of the pay disparity to Alton Sermon, her supervisor. She testified that on one occasion, he replied that she was paid less because Atchison was the head of a household and thus required a greater salary. Smith stated that she informed Sermon that this reason was discriminatory. Smith never reported Sermon's comment to any-

---

**1.** There was some controversy as to whether plaintiff brought a substantive claim under the Equal Pay Act, in addition to the Title VII claim. The district court noted that the complaint was ambiguous because plaintiff never clearly states an Equal Pay Act claim, yet the statute is referenced throughout the complaint. The original complaint only mentions Title VII. The complaint was then amended to add a retaliation claim and the language of the amended complaint indicates that the plaintiff was bringing an underlying action under Title VII and an action claiming retaliation under Title VII and the Equal Pay Act. The trial court decided to analyze both a Title VII and an Equal Pay Act underlying claim because of the ambiguity of the complaint and because defendant did not object. We will confine our review, however, to the charges specifically set forth in the complaint.

one at RCI nor did she have a contemporaneous written record of the statement.

When Smith and Atchison were hired, RCI did not have a centralized salary system. In December 1982, RCI began to implement the Hay system, which evaluates jobs and assigns each job a grade level. All employees were required to complete position questionnaires detailing their duties and responsibilities, which were reviewed by their supervisors. RCI management then chose some positions as benchmarks for evaluation and grading. A committee evaluated the benchmark questionnaires; quantified the degree of knowledge, problem-solving and accountability that the position required; and assigned a grade level to each benchmark position. The remaining positions were graded by comparing them to a similar benchmark position.

Each grade was given a desired salary range. The employee's actual salary was compared to the midpoint of their grade's salary range and described in terms of a percentage of the midpoint salary. This figure was referred to as a compa-ratio and the desired compa-ratio was between 80 and 120% of the midpoint of the salary range. Thus, if the survey showed that an employee's pay was less than 80% of the midpoint, it indicated that the employee should be awarded larger and more frequent raises.

Atchison's job was selected as the benchmark position for the other plant accountants, including Smith. Atchison's position was assigned grade 11 and Smith's job was compared to his in order to determine her grade level. She also was assessed as a grade 11. Her compa-ratio was 67.5%. Atchison's compa-ratio before his increase in October 1983 was 89.7%.

Smith remained a staff accountant until April 1983 when she was promoted to Assistant Division Controller, a grade 14 position. This position involved increased supervisional responsibility and providing information and assistance to nine plant accountants to enable them to gather and relay data to the division.

Atchison remained a plant accountant until the summer of 1983 when he moved to the Newport Division Office in Pensacola, where Smith worked. He became the Division Budget Coordinator, a grade 13 position. Atchison's new job consisted of assembling manufacturing budgets and preparing sales forecasts for the entire division. Atchison also implemented a computer program to allow him to track important statistics. Smith testified that she helped Atchison with the budget and the formulation of procedures for formatting the budget.

Smith further testified that at this point, Atchison was earning more income than she was because her salary still had not reached his starting salary of approximately $25,000. She further testified that this disparity led her to file an EEOC complaint in June 1984, alleging sex-based discrimination. Beginning the year before her charge was filed, Smith received a 15% salary increase every six months. These increases, however, did not increase her salary to Atchison's level for the period of April 1983 to June 1984.

In April 1985, both Atchison and Smith became group accountants, responsible for division duties and addressing the needs of the plant accountants. During this period of time, the two employees were performing exactly the same jobs. Smith was given raises such that her salary exceeded Atchison's during this period. In late 1985, Atchison returned to a plant in an accountant position and Smith was given the position of division accountant.

Smith's performance appraisals from the time she was hired in 1981 until 1985 stated that her performance was "commendable," the second highest rating. In 1986, she received a rating of "good" and her April 1987 evaluation rated her between "good" and "commendable." Atchison's appraisals from 1981 through 1987 all indicated that his performance was "good."

In 1986, RCI began to make changes in its management personnel by requiring that positions be filled by persons with advanced degrees. This change in corporate philosophy caused some internal strife

because long-term employees who did not have such degrees began to be replaced. Peter Hill, Smith's supervisor from 1985 until 1987, was one of the persons replaced under the new management philosophy. Following Hill's departure, Ron Pace became her manager.

Hill testified that in August 1986, he met with two other managers, Jim Compass and Keith Hall, to discuss restructuring the accounting function in the division office. Compass discussed a proposal to create three new positions and hire persons with academic backgrounds and advanced degrees. At a subsequent meeting, Hill expressed concern about whether Smith would need to apply for one of these three positions. This concern was not addressed. Shortly thereafter, a job notice was posted on the bulletin boards of RCI's plants that virtually described Smith's job. Hill immediately contacted Compass to complain that the notice was posted prior to a discussion with Smith. The posting was withdrawn.

Smith's retaliation claim was substantially based on the changes made to her performance appraisal for the period from February 1986 to February 1987. The evaluation originally was completed by Peter Hill, but subsequently comments were added by Ron Pace. Pace changed the dates of the period being evaluated to include March and April of 1987. He also decreased Smith's overall rating from "commendable" to a rating between "commendable" and "good." Smith refused to sign her performance appraisal because she did not agree with the changes made by Pace.

In May 1987, Smith applied for two internally advertised positions, cost manager and financial accounting services. The posting for the managerial position stated that a B.S. in finance, accounting or business administration and an M.B.A. in finance or equivalent experience was required. The posting also stated that three to five years of cost accounting analysis was needed. Ms. Smith did not possess the requisite degrees for the job; however, she testified that she believed that she was qualified for the position. The posting for the financial accounting job stated that a B.S. in accounting and a C.P.A. and/or equivalent experience was necessary. The job announcement also asked for managerial experience in general accounting and public accounting work. Ms. Smith did not possess the requisite degrees nor had she worked in a public accounting environment. Ms. Smith did not receive either of the two positions.

In August 1987, Ms. Smith was transferred to the Pensacola plant as a plant accountant. Ms. Smith testified that she viewed the job as a demotion; however, she conceded that she told her supervisor that she would be interested in a position as plant controller. Her supervisors had told her that plant experience would enable her to advance within RCI. Ms. Smith was acting as a controller for the Pensacola plant when this case came to trial.

## II.

Section 706(k) of Title VII of the Civil Rights Act of 1964 provides that a district court has the discretion to award attorney's fees to the prevailing party in a civil rights lawsuit brought under the Act. 42 U.S.C. § 2000e–5(k). The statute, however, does not provide any criteria to govern the award of such fees. The Supreme Court granted certiorari in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), to articulate standards to guide the district courts in their exercise of discretion.

The Court first determined that the standard for awarding fees to a prevailing defendant should be more stringent than the criteria applied to a prevailing plaintiff. The Court cited two reasons: (1) Congress chose the plaintiff as the means to vindicate an important public policy; and (2) a fee award to a plaintiff is assessed against a violator of federal law, whereas a fee award to a defendant is determined against a merely improvident litigant. *Id.* at 418, 98 S.Ct. at 699.

The Court, however, also stated that Congress intended a standard which was not so severe as to require proof of bad faith. If Congress required bad faith on the part of the plaintiff, the statute would

have been superfluous because American common-law allows for a fee award in those circumstances. In addition, it cannot be assumed that Congress would set forth a statute giving plaintiffs incentive to sue, without providing safeguards to protect a defendant from a baseless action. *Id.* at 419, 98 S.Ct. at 699.

The Court noted that the legislative history of Title VII's fee provision was sparse and merely mentioned the competing goals of allowing for vigorous enforcement of the statute and deterring groundless lawsuits. The Court compromised between these concerns and adopted a standard whereby

> a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

*Id.* at 421, 98 S.Ct. at 700.

The Court then specifically cautioned district courts to resist "the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. at 700. The Court noted that if district courts engaged in hindsight, only the most persuasive claims would be brought because a plaintiff is rarely assured of prevailing in her lawsuit. *Id.* at 422, 98 S.Ct. at 700. Furthermore, the course of litigation is unpredictable because facts may become clear during the trial and the law may evolve.[2] *Id.*

The Court summarized its holding by stating that a plaintiff should not be assessed fees unless her claim is frivolous or groundless or becomes so during the course of litigation and she continues to press it. *Id.* at 422, 98 S.Ct. at 701. *See also Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 915 (11th Cir.1982) (quoting *Christiansburg* standard). Mindful of this standard, we now turn to the underlying claims to assess whether they meet the criteria set forth in *Christiansburg.* We review the district court's award under an abuse of discretion standard. *See Terry Properties, Inc. v. Standard Oil Co.,* 799 F.2d 1523, 1540 (11th Cir.1986).

### III.

#### A.

The EEOC filed a complaint against RCI alleging that Carolyn Smith was paid a lower salary than male employees in violation of Title VII of the Civil Rights Act. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Subsequently, the complaint was amended to include a charge of retaliation under both Title VII and the Equal Pay Act. Both Acts state that it is unlawful for an employer to discriminate against an employee because she has brought charges relating to these statutes.[3]

In order to meet her burden of proof under Title VII, the plaintiff must establish a prima facie case of discrimination. Plaintiff can meet her burden by "demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." *Miranda v. B & B Cash Grocery Store, Inc.,* 975

---

**2.** This court has further clarified the standards for assessing fees by articulating three factors to be used in determining whether a claim is frivolous: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle the case; and (3) whether the trial court held a full trial or dismissed the case before the trial. *See Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985).

**3.** According to Title VII, 42 U.S.C. § 2000e–3(a), "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter."

The Equal Pay Act, 29 U.S.C. § 215(a)(3), also makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ... under or related to this subchapter...."

F.2d 1518, 1529 (11th Cir.1992). Once the plaintiff meets this burden, the defendant must articulate non-discriminatory reasons for its actions. This burden has been characterized as "exceedingly light". *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983). Plaintiff then can show that these reasons are pretextual. Although the burden of production shifts between the plaintiff and defendant, the burden of persuasion remains with the plaintiff. *See Feazell v. Tropicana Products, Inc.*, 819 F.2d 1036, 1039 (11th Cir.1987).

Recently, this circuit has ruled that Title VII has a "relaxed standard of similarity between male and female-occupied jobs." *Miranda*, 975 F.2d at 1526. The employee is not required to meet the requirements of the Equal Pay Act in which a plaintiff must show that she is paid less "for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions...." 29 U.S.C. § 206(d)(1).

In *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), the Supreme Court distinguished between Title VII and the Equal Pay Act on the ground that Title VII was designed to encompass a wider range of employment practices. The Court noted that constraining Title VII to the narrow standards of the Equal Pay Act would mean that

[a] woman who is discriminatorily underpaid could obtain no relief—no matter how egregious the discrimination might be—unless her employer also employed a man in an equal job at the same establishment, at a higher rate of pay.

*Id.* at 178, 101 S.Ct. at 2252. The Court held that Congress did not intend such an anomalous result and thus, a Title VII plaintiff could prevail if she could prove unfair treatment and an intent to discriminate. *Id.* at 179–80, 101 S.Ct. at 2253.

■ Although Title VII affords a plaintiff a less stringent standard of proof on

the similarity of the jobs, she must establish an intent to discriminate. *Miranda*, 975 F.2d at 1526. This circuit has clarified *Gunther* in holding that a Title VII plaintiff need not submit direct proof of intent to discriminate, but can rely on circumstantial evidence. *See Smith v. Horner*, 839 F.2d 1530, 1536 (11th Cir.1988). Requiring direct evidence would eviscerate Title VII's effectiveness because direct evidence rarely exists in disparate treatment cases. *See Miranda*, 975 F.2d at 1536 (Dubina, J., concurring).

■ The trial court found that the EEOC had failed to establish a prima facie case of discrimination because Atchison and Smith did not hold similar or substantially equal positions throughout the time period covered by the EEOC charge. The court did find that during 1983 and 1984, when Smith was Assistant Division Controller and Atchison was Budget Coordinator, both performed accounting duties at the division level, but the court concluded that the accounting services were different in nature and content to a degree which rendered the EEOC's claim groundless.

The record does not support the district court's conclusion. The evidence suggests that the jobs were sufficiently alike during this period to give the EEOC's claims merit, thus meeting the standard articulated in *Christiansburg*. Smith and Atchison both worked at a central office compiling data from the company's various plants. Although Atchison and Smith worked on distinct projects, they both were charged with facilitating the process by which division statistics were compiled and reported. Atchison adapted and developed software programs to allow him to track important statistics. He also assembled budgets and prepared sales forecasts.[4] Although Smith did not work with software packages, she continued to assemble data and prepare corporate reports. Smith testified that she assisted Atchison in his budget duties. Both employees reported to the same su-

---

**4.** The record contains evidence that Atchison worked longer hours than Smith and that his job was more technical. This evidence provides a sufficient basis for ultimately rejecting Smith's

claim, but it does not negate the fact that other testimony supported Smith's claim such that it was not frivolous.

pervisor, Alton Sermon, during this period. Thus, the facts establish that the jobs were similar during this period. The district court failed to consider that Title VII has a relaxed standard for proving the similarity of positions and as a result, abused his discretion in finding the claim to be frivolous and groundless.

In addition, differences in the positions actually support the EEOC's Title VII claim. Smith's job during this period was graded higher and presumably required greater skill and knowledge; yet she was paid less. Smith was responsible for supervising three employees, while Atchison did not have supervisory duties. Furthermore, Smith's appraisals were consistently higher than Atchison's throughout this period. The district court failed to consider the hypothetical posed by the *Gunther* court, in which a woman is grossly underpaid but her job is not exactly comparable to a man's position. The Court stated that Title VII was designed to address this discriminatory situation. Once again, even if the EEOC did not provide adequate evidence to support this charge, it met the *Christiansburg* burden because the claim was not baseless.

■ Moreover, RCI implemented a grading system of its own volition. In doing so, it measured the knowledge and skill required in each position. Thus, the trial court was not asked to make a comparison of two jobs; the company had already done so. Based on its own initial evaluation in 1982, RCI decided that Atchison and Smith were doing jobs that required the same skill and knowledge. Yet Smith was paid considerably less.[5] In addition, Smith claims that she was told that the reason for

her lower compensation was that she did not support a household.[6] Later, when Smith became Assistant Division Controller and Atchison was Budget Coordinator, the company continued to evaluate their jobs. Smith's job was given a higher grade, indicating that her job was more difficult and demanding. She continued to be paid less than Atchison. Again, such facts may not prove plaintiff's case, but they constitute circumstantial evidence sufficient to establish a prima facie case and preclude an award of attorney's fees.

The evidence in this case does not support the district court's decision to award fees. The court found that documentary evidence and testimony adequately refuted plaintiff's initial claim. Plaintiff should not be assessed fees, however, because a defendant can offer convincing non-discriminatory reasons for its actions. According to *Christiansburg*, plaintiff merely must establish a credible claim, not a successful one. Thus, we hold that the award of attorney's fees for the plaintiff's Title VII claim was an abuse of discretion.

### B.

■ As for the underlying retaliation claims, plaintiff establishes a prima facie case under Title VII by showing that she exercised her protected rights, an adverse employment action occurred, and the adverse action was causally related to the plaintiff's protected activities. *Hamm v. Members of the Board of Regents*, 708 F.2d 647, 654 (11th Cir.1983). This court has interpreted the causal link requirement broadly; a plaintiff merely has to prove that the protected activity and the negative

---

**5.** The trial court emphasizes the fact that Smith received larger and more frequent raises than Atchison after the grading system was implemented. Such information is irrelevant because the frequent raises do not establish that the company was not discriminating against Smith. She continued to receive a lower salary than her male counterpart. A defendant cannot argue that it should escape liability because it is steadily decreasing a sex-based disparity. The statute contemplates that discriminatory behavior will immediately be corrected.

**6.** RCI emphasizes that the comment took place before the time period which is at issue in this

lawsuit. According to the statute, Smith may only charge Title VII violations that occurred within 300 days of her complaint. The company notes that Smith filed her EEOC complaint in June 1984; thus, she is entitled to relief only for actions occurring after August of 1983. The company is correct in its assertion; however, the comment and the actions occurring before August 1983 may be used as background information to explain the company's later motives and actions. *See EEOC v. McCarthy*, 768 F.2d 1, 4 (1st Cir.1985).

employment action are not completely unrelated. *Simmons v. Camden County Bd. of Ed.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). The burden of production then shifts to the defendant to establish non-retaliatory reasons for the employment actions. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494–95 (11th Cir.1989). The plaintiff can refute these reasons by proving that they are pretextual. *Id.* Again, the burden of production shifts, but the burden of persuasion remains with the plaintiff. *Id.*

■ In this case, the trial court found that the plaintiff had not proven that the employment actions were adverse or retaliatory. The court also stated that even if the EEOC had established a prima facie case, it had not rebutted the legitimate reasons advanced by RCI. Again, the court required plaintiff to meet a more stringent standard than required by *Christiansburg*. The EEOC presented sufficient evidence to overcome a charge that the claims were frivolous or without merit.

The EEOC submitted evidence that RCI had advertised for a job opening that exactly described Smith's position. Hill, Smith's supervisor, testified that he read the notice and contacted management about removing it because it appeared that Smith's job was available and she had not been so informed. Moreover, Smith was reassigned to a job that was generally considered a demotion from her previous position.[7] She was interviewed briefly for two jobs, each of which encompassed some of her duties. She was not offered either position. In addition, Pace adjusted her annual appraisal even though he had only supervised her for four of the fourteen months covered by the evaluation. He gave her a lower overall rating than her previous supervisor had intended. Moreover, these combined actions occurred shortly after the EEOC declared that conciliation had been unsuccessful.

7. Smith switched jobs with David Musselman. Musselman testified that he considered the move a demotion for Smith and a promotion for him. The evidence does show that Smith expressed an interest in acquiring skills as a plant accountant; however, she desired a temporary move to a plant. Musselman testified that management did not indicate that the switch was temporary.

The plaintiff relied on this circumstantial evidence to establish a prima facie case. Admittedly, defendant's counsel presented convincing proof of non-discriminatory reasons for each of these measures and defeated her claims on the merits; the cumulative effect of these employment actions and their timing, however, was sufficient to meet the plaintiff's initial burden. Accordingly, the retaliation claims were not frivolous and the district court abused its discretion in awarding fees against the EEOC.

## IV.

The record supports the district court's decision on the underlying claims. However, we are not asked to rule on the merits of the EEOC's charges. Instead, we review the trial court's decision to award attorney's fees to RCI as the prevailing defendant. The Supreme Court has set forth a standard to guide the trial court's discretion in granting fees. Plaintiff's claims must be "frivolous, unreasonable, or without foundation" to merit a fee award. *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700. The district court failed to recognize the stringency of this standard and consequently abused its discretion in assessing the evidence presented by the EEOC. The record does not support the decision to grant fees. Accordingly, the district court's order granting attorney's fees is REVERSED.

HILL, Senior Circuit Judge, dissenting:

Under the limited review which we undertake in this case, we must affirm unless we find that the district judge abused his discretion. *Terry Properties*, 799 F.2d at 1538, 1540. I am satisfied that the district court's findings are fully supported by the record and would affirm.

With regard to the EEOC's wage discrimination claim, the district court found that the jobs performed by Atchison and Smith were neither similar nor substantially equal except during the period in which both served as Group Accountants and Smith's salary exceeded Atchison's. The

court noted that in many respects Smith was treated more favorably than Atchison.

With regard to the cost manager and financial accounting positions advertised in May, 1987, the court found that the stringent requirements for those positions adversely impacted all Reichhold employees without regard to whether an employee had filed an EEOC claim. The court also found that Smith did not meet the stated requirements. The court found that Smith's August, 1987 transfer to Pensacola was voluntary and in part a response to her own expressed career goals. The judge pointed out that Smith was not demoted and retained the same grade level.

With regard to Smith's performance appraisals, the court found that supervisor Ron Pace's amendment to Smith's April, 1987 performance appraisal included positive comments and that his final rating was consistent with the information earlier provided by supervisor Peter Hill. The court further found that the negative comments in Smith's May–December, 1987 appraisal were supported by a record of difficult relations between Smith and other employees, and that after meeting with Smith, supervisor Phil Carden "accommodated her concerns" and upgraded her rating from "adequate" to "good", the same rating she had received the previous year.

The court next found Appellant's claim that Smith failed to receive a merit raise in 1987 to be "wholly negated by the record," noting that she did receive a raise and that any delay in her receipt of it was caused by the illness of her original supervisor and personnel changes in management during that period. The court held that the EEOC had failed to demonstrate a causal link between Smith's filing of an EEOC claim and the alleged retaliatory employment actions. As a final note, the court emphasized evidence of "numerous attempts by the defendant to accommodate Smith's demands and complaints."

In granting Reichhold's motion for fees, the district judge showed sensitivity to the *Christiansburg* standard. I do not believe he misunderstood that standard, nor do I find his conclusions to be unsupported by the record. While *Christiansburg* requires a stronger showing for an assessment of fees against a Title VII plaintiff than against a Title VII defendant, it balances the rights of Title VII plaintiffs against the financial concerns of "small- and moderate-sized employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights." *Christiansburg, supra,* 434 U.S. at 423 n. 20, 98 S.Ct. at 701.

The district judge felt strongly that an award of fees was appropriate in this case, commenting at trial that he had not found an employment discrimination case more lacking in substance and that the EEOC had not acted responsibly in pursuing it. Even if my view of the case differed from his, I would not and could not substitute my judgment for his. Given the narrow scope of our review, I would affirm.