**Sharon E. TROGE, Plaintiff,**

v.

**J.C. PENNEY COMPANY, INC., Defendant.**

**No. 97–2038–Civ–T–17C.**

United States District Court, M.D. Florida, Tampa Division.

April 14, 1999.

Howard J. Shifke, Howard J. Shifke, P.A., Tampa, FL, for Sharon E. Troge, plaintiff.

M. Kristen Allman, Haynsworth, Baldwin, Johnson & Greaves LLC, Tampa, FL, Jerome K. Lipsich, J.C. Penney Company, Inc., Dallas, TX, for J.C. Penney Company, Inc., defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant's, J.C. Penney Company, Inc., ("J.C.Penney"), Motion for Summary Judgment & Memorandum in Support (Dkt. No. 19) and the Plaintiff's, Sharon E. Troge, ("Troge"), Response in Opposition (Dkt. No. 31).

### FACTUAL BACKGROUND

The complaint in this action was filed on August 21, 1997. The relevant facts, as pled and accepted as true for the purposes of this motion, are summarized as follows: Plaintiff has been employed with Defendant Company since November 21, 1985. (Dkt. No. 1 ¶ 6; 10 ¶ 6). During the time period in question, Plaintiff was under the supervision of Mr. John Lee, ("Mr.Lee"), Manager of University Mall J.C. Penney Store located in North Tampa. Prior to the actions that led to this complaint, Plaintiff alleges she was an excellent employee and got along well with Mr. Lee. Plaintiff claims Mr. Lee gave her a hug each day as well as an award on Valentines Day for doing a good job. (Dkt. No. 1 ¶ 7, 14). Defendant claims Plaintiff generally received satisfactory and above average annual employment ratings, but denies Plaintiff was an excellent employee.

Defendant admits Mr. Lee gave Plaintiff a daily "friendly" hug, but denies she received an award on Valentine's Day. (Dkt. No. 10 ¶¶ 7, 14).

In July 1996, Plaintiff communicated orally and in writing, to the Defendant's Regional and District offices, complaining about illegal forms of discrimination by various management employees, including Mr. Lee, at the location where Plaintiff was employed. (Dkt. No. 1 ¶ 10–11; 10 ¶ 10–11). On August 8, 1996, Plaintiff spoke to Mr. Earl Land, ("Mr.Land"), J.C.

Penney District Manager, alleging that Mr. Lee, was engaging in discriminatory practices. On or about August 29, 1996, Plaintiff also wrote a letter to Mr. Land describing specific instances of discriminatory conduct on the part of Mr. Lee. (Dkt. No. 1 ¶ 11–12; 10 ¶ 11–12). Following Plaintiff's complaints, Mr. Land investigated the allegations and determined that they were without merit. (Dkt. No. 1 ¶ 13; 10 ¶ 13). Following the complaints and investigation, Plaintiff alleges Mr. Lee retaliated against her in a series of actions at the workplace. The actions by Mr. Lee Plaintiff complains of include: following her around the store; standing outside the restroom door while Plaintiff was inside; peeking in the door to watch Plaintiff while she was working; glaring at Plaintiff while she was in the break-room on a work break; giving her the "cold shoulder" and ceasing the daily hugs; and excluding Plaintiff from conversations with other employees. (Dkt. No. 1 ¶ 15). Defendant denies all Plaintiff's allegations except that Mr. Lee did give Plaintiff the "cold shoulder" and ceased all friendly contact after the complaints to Mr. Land. (Dkt. No. 10 ¶ 15).

On February 19, 1997, Plaintiff testified against Defendant in Federal Court. The case involved a race discrimination claim and was brought by a former University Mall store employee. Plaintiff alleges her testimony contained statements against two J.C. Penney employees, Mr. Lee and Mr. Clay Shearer. (Dkt. No. 1 ¶ 16–17). Following her testimony, Plaintiff claims Mr. Lee's retaliatory actions continued and increased. Plaintiff claims: Mr. Lee's act of following her around the store intensified; when Plaintiff stopped to look at Mr. Lee when he was following her, he would stand there and smile; Mr. Lee was standing next to Plaintiff's car in the parking lot glaring at Plaintiff and her daughter; Mr. Lee instated a rule where only Plaintiff's duties were restricted; Mr. Lee blocked Plaintiff in the hallway and did not allow her to pass him; and Mr. Lee instructed other employees not to talk to Plaintiff or they would be admonished for interfering

with Plaintiffs duties. (Dkt. No. ¶ 19). The Defendant denies all of Plaintiff's allegations. With respect to Plaintiff's duties being restricted, Defendant claims the duties were "menial clerical" tasks generally performed by lower labor cost employees. Defendant claims the supervisor who assigned these tasks was instructed by Mr. Lee to keep stockroom employees where they were assigned because of their higher labor cost. Additionally, Defendant suggests Plaintiff was originally asked to assist with these tasks because of her previous office experience and there had been a decline in budgeting for this type of office work at the University Mall store. (Dkt. No. 10 ¶ 19).

In March 1997, Plaintiff communicated the additional retaliatory acts to Mr. Land and on March 25, 1997, filed a Charge of Discrimination with the EEOC, No. 151970923. (Dkt. No. 1 ¶ 20–21; 10 ¶ 20–21). On April 4, 1997, Mr. Richard Shuey, Regional Personnel Relations Attorney, wrote to Plaintiff regarding her communication with Mr. Land and her EEOC charge. Plaintiff claims this letter served as a threat to her continued employment with J.C. Penney. (Dkt. No. 1 ¶ 22). Defendant admits the letter was sent, but denies that it was a threat to Plaintiff's employment. (Dkt. No. 10, ¶ 22). The EEOC granted Plaintiff a right to sue on May 23, 1997, and Plaintiff brings one count of discrimination under the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, 42 U.S.C. § 2000e. (Dkt. No. 1 ¶ 24). Specifically, Plaintiff alleges retaliation discrimination and the creation of a hostile work environment under 42 U.S.C. § 2000e–5(a)(1) and (2) and § 2000e(3)(a). (Dkt. No. 1 ¶ 27). Defendant filed a motion for summary judgment on December 30, 1999, to which this order is addressed. (Dkt. No. 19).

## STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue of material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. That burden can be discharged by "showing ... that there is an absence of evidence to support the non-moving party's case." *See Celotex,* 477 U.S. at 323, 325, 106 S.Ct. 2548. Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the non-moving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505.

In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *See Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–997 (5th Cir.1979) (quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969)). Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *See Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

## DISCUSSION

In order to make a *prima facie* case of retaliation, a plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *See Goldsmith v. City of Atmore,* 996 F.2d 1155 (11th Cir.1993). Once the plaintiff has established a *prima facie* case, the defendant may come forward with legitimate reasons for the employment action to negate the inference of retaliation. If the defendant offers legitimate reasons for the employment action, the plaintiff then has the burden of proving by a preponderance of the evidence the reasons offered by the defendant are pretextual. *See id.* at 1162.

In the instant case, Plaintiff alleges that her complaints of discrimination at the workplace and her testimony in a Federal racial discrimination case constituted protected opposition conduct. Defendant does not contest that Plaintiff was engaged in a statutorily protected expression for the purposes of this motion. Therefore, the first requirement for Plaintiff to establish a *prima facie* case of retaliation is satisfied.

With regard to the second element of Plaintiff's retaliation claim, Plaintiff alleges she suffered an adverse action as a result of her opposition conduct. Plaintiff cites

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), which outlines the standard to be used in this portion of the analysis. *Harris* states the court should consider the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it reasonably interfered with the employee's work performance. Plaintiff alleges a number of actions caused materially adverse changes in her employment. Plaintiff specifically alleges the following actions unreasonably interfered with her ability to perform her duties: the frequency and severity of Mr. Lee's conduct; the physical danger and humiliation she suffered because of Mr. Lee's conduct; the restrictions that were imposed involving conversations with other employees and her job duties; and the letter written by Mr. Shuey in response to her complaints of Mr. Lee.

■ Defendant responds to these allegations by claiming the acts were not persistent, routine, physically threatening or humiliating. Defendant asserts there is no evidence that Plaintiff suffered an adverse employment action after alleging discrimination in the workplace. Defendant also claims the acts are not sufficiently severe and pervasive to alter the terms and conditions of employment and do not meet the threshold of substantiality necessary for a successful retaliation claim. In support of its argument, Defendant cites *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir.1998), for two purposes. First, Defendant cites *Wideman*, to illustrate a standard of substantiality stating that "protection against retaliatory discrimination extends to adverse actions that fall short of ultimate employment decisions, but are nonetheless substantial." *See id.;* (Dkt. No. 19 p. 5). Second, Defendant compares the facts and discriminatory conduct alleged in *Wideman* to the present case. *See Wideman,* 141 F.3d at 1453. Defendant claims the instances of discriminatory conduct presented in *Wideman* are more severe in nature than those experienced by Plaintiff; and because of this

severity, the court found sufficient evidence to establish a *prima facie* case of retaliation. *See id.* However, Defendant failed to point out the *Wideman* court did not intend that the conduct described should act as a standard of substantiality to which retaliation claims should be measured. The court stated:

> Although we do not doubt there is some threshold level of substantiality that must be met for unlawful discrimination to be cognizable under the anti-retaliation clause, we need not determine in this case the exact notch into which the bar should be placed. "[W]e need not and do not decide whether anything less than the totality of the alleged reprisals would be sufficient."

*See id.* at 1456. With this in mind, Defendant's argument that the acts in question lack severity and do not meet the level of substantiality outlined in *Wideman* is unfounded.

■ In considering the third element of the retaliation claim, Plaintiff must establish a "causal link" between the protected expression and the adverse action. To establish the "causal link," a plaintiff need only establish that the protected activity and adverse action were not wholly unrelated. *See E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993). In *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir.1987), the court held that a close proximity between opposition conduct and an adverse employment action is evidence of a "causal link." In addition, evidence that an employer knows of an employee's protected activity, combined with a proximity in time between protected action and the allegedly retaliatory action, is sufficient to establish a *prima facie* case of retaliation. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987). In this case, Defendant knew of Plaintiff's protected activity, and as stated above, does not contest it for the purposes of this motion. The record indicates that the alleged discriminatory practice started after Plaintiff's complaints to Defendant and her tes-

timony in the race discrimination case. Moreover, Plaintiff was employed with Defendant company for approximately eleven years prior to the protected activity and the alleged retaliatory behavior. Thus, Plaintiff's claim is sufficient to withstand summary judgment regarding the issue of a causal link between the events.

In addition to Defendant's argument that Plaintiff did not suffer an adverse employment action after alleging discrimination in the workplace, Defendant does offer reasons for two of Plaintiff's specific instances of alleged misconduct. First, the Defendant states the job duty restrictions instituted by Mr. Lee were not duties of her employment, but menial fill-in work. According to the Defendant, it was not cost effective to have the Plaintiff perform these tasks which were normally reserved for lower paid employees. In response, Plaintiff maintains the assertion that the Defendant did instate a rule that restricted her job duties and only her job duties. There is no evidence in the record, other than Defendant's assertions, that the type of work restricted was menial.

Second, the Defendant asserts the April 4, 1997 letter by Mr. Shuey, in response to Plaintiff's complaint and EEOC charge of discrimination, did not threaten Plaintiff's continued employment with J.C. Penney. Plaintiff maintains the letter did in fact threaten her continued employment and attached a copy as Exhibit A, in the Response in Opposition to Defendant's Motion for Summary Judgment. (Dkt. No. 31). The letter states in part:

> It has become apparent that you may not understand the difference between speech and conduct which is protected by Title VII, and that which is not. The purpose of this letter is to attempt to clarify it for you so you will not continue to engage in conduct which has already provided sufficient grounds for your dismissal.

(Dkt. No. 31, Exhibit A).

The Defendant has failed to come forward with undisputed legitimate reasons for the employment actions. Therefore, the Defendant has not established entitlement to summary judgment. This Court believes resolution of these and potentially other issues of the retaliation claim in this case will turn, in part, on the credibility of the testimony. "Credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With this consideration in mind, and viewing the evidence in the light most favorable to the nonmoving party, this Court finds Plaintiffs' allegations of retaliation sufficient to survive Defendant's Motion for Summary Judgment. Accordingly, it is

**ORDERED** that Defendant's, Motion for Summary Judgment, (Dkt. No. 19), be **DENIED.**

**DONE AND ORDERED.**