[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13625
Non-Argument Calendar

_____

D. C. Docket No. 04-00356-CV-1-MMP

STEVE T. MALU,

Plaintiff-Appellant,

versus

CITY OF GAINESVILLE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 26, 2008)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Steve T. Malu appeals a district court decision granting a directed verdict in

favor of the City of Gainesville ("City").  Malu brought this action against the City pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, alleging, *inter alia*, discrimination on the basis of national origin and retaliation.  According to Malu, the City rejected his application for employment as its Charter Equal Opportunity Director because of his Nigerian national origin and because he had filed an EEOC charge and a lawsuit against the City.  Following the close of Malu's case-in-chief at trial, the district court granted the City's motion for a directed verdict, finding that Malu had failed to put forth sufficient evidence to establish either of his claims.  For the reasons set forth below, we affirm.

## I. BACKGROUND

Malu was employed by the City as an affirmative action officer from September 1999 until August 2002, when he was terminated.  Following his termination, Malu filed a discrimination claim with the EEOC and brought suit against the City in Florida circuit court, alleging race and national origin discrimination, as well as retaliation.

During the same period, the City obtained passage of a referendum providing for the establishment of a Charter Equal Opportunity Director position. The Gainesville City Commission ("City Commission") appointed an Ad Hoc

2

Charter Officer Equal Opportunity Advisory Committee ("Ad Hoc Committee" or "Committee") to develop a selection process for the position. The Ad Hoc Committee voted to hire an outside consultant, Robert Slavin of Slavin Management Consultants ("SMC"), to assist in the identification and selection of qualified applicants. Slavin reviewed all applications and submitted the names of selected candidates to the Ad Hoc Committee, which had the option of accepting or rejecting his recommendations.

In September 2003, while his lawsuit was still pending, Malu submitted an online application for the Charter Equal Opportunity Director position. As part of this application, Malu acknowledged that he may be required to complete a background data packet and that the failure to complete the packet would result in immediate rejection of his application.

Slavin narrowed the initial applicant pool to twenty-five semifinalists, including Malu. Each semifinalist was asked to complete a questionnaire and waiver form that included language releasing SMC and the City from any claims arising out of the reporting of information through the background investigation. Malu completed and returned the questionnaire but did not submit the required waiver form. Instead he provided his own waiver document that did not include the pertinent release language.

After receiving documentation from the semifinalists, Slavin narrowed the list to fourteen candidates, whom he divided into three categories: an "A" list, a "B" list, and a "special circumstances" list. The special circumstances list consisted of Malu and one other candidate. During a conference call in December 2003, Slavin advised the Ad Hoc Committee that Malu had been placed on the special circumstances list because of his refusal to sign the required waiver of liability. Slavin informed the Ad Hoc Committee that he could not have any candidate go forward in the process until he or she signed the release. During this call, the Ad Hoc Committee also discussed the fact that there was an ongoing lawsuit between Malu and the City.

The other candidate on the special circumstances list, Darryl Elmore, was a former City employee who had previously sued the City and had entered into an settlement in which he agreed not to apply for employment there again. The Ad Hoc Committee moved Elmore to the "A" list, based in part on Slavin's assessment of his qualifications. It then agreed to forward the candidates on that list to the City Commission for review.

After learning of the Ad Hoc Committee's decision, Malu contacted Slavin concerning the status of his application. According to Malu, Slavin told him that he (Slavin) was taking direction from Tom Motes, the City's Director of Human

4

Resources and Malu's former supervisor. Slavin allegedly said that Motes would not allow the application to go forward because Malu had filed a suit against the City. Further, Slavin told him that he was not able to get a reference for Malu from the City, and, since part of the process was obtaining references for all applicants, this posed an additional problem with his application. Malu testified that after he spoke with Slavin, he called Motes on December 29, 2003, to inquire about the status of his application. According to Malu, Motes told him that his application would not go forward because he had filed a lawsuit against the City, and because he was from Nigeria. Malu testified that Motes told him that he would not be a good person for the position because people from Nigeria do not respect women.

Following the close of Malu's case, the City moved for judgment in its favor on both the discrimination and the retaliation counts. The district court found that Malu had not put forth sufficient evidence to show that the Ad Hoc Committee or the City Commission failed to consider him for the position because of his national origin. In addition, the court found that the evidence failed to show that Malu's prior lawsuit in any way influenced Slavin, the Ad Hoc Committee, or the City Commission in their decision. Accordingly, the district court granted the motion in favor of the City. This timely appeal followed.

## II. DISCUSSION

5

We review *de novo* a district court's grant of judgment as a matter of law under Fed. R. Civ. P. 50(a), applying the same standard that bound the district court.[1] *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 616 (11th Cir. 2007). "[W]e examine the evidence presented at trial in the light most favorable to [Malu]." *Id.* Although we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir.1999). A judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).

## 1. National Origin Discrimination Claim

Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a); *see also Bass v. Bd. of County Comm'rs, Orange*

---

[1] Although the record indicates that the City moved pursuant to Rule 41, we conclude that the motion is properly construed as one for judgment as a matter of law under Rule 50(a).

*County, Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001). "A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination." *Bass*, 256 F.3d at 1103. "Direct evidence of discrimination is evidence, that, if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (alterations in original) (internal quotation marks omitted). However, if the statement is merely suggestive of a discriminatory motive, then it is circumstantial evidence. *Id.* "[R]emarks by non-decisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." *Bass*, 256 F.3d at 1105 (internal quotation marks omitted).

Malu argues that he presented direct evidence at trial to substantiate his national origin discrimination claim. We disagree. While Malu did introduce evidence of discriminatory animus on the part of Motes, he failed to present any evidence that Motes was a decisionmaker with respect to his application. In fact, the record indicates that the Ad Hoc Committee was the decisionmaker and that it acted independently of Motes. Although Motes attended some Committee meetings and answered members' questions, there is no evidence that he ever made recommendations concerning which candidates should go forward in the selection

process. Thus, the statements attributed to Motes are not direct evidence of discrimination, and Malu therefore must rely on circumstantial evidence to substantiate his claim.

Where a plaintiff seeks to establish a disparate treatment claim through circumstantial evidence, we test the sufficiency of that claim by applying the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *Bass*, 256 F.3d at 1103-04. Under this framework, the plaintiff first must establish a *prima facie* case of discrimination. *Id.* at 1104. In an action alleging discrimination through a failure to hire, the plaintiff establishes a *prima facie* case by showing that (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the defendant was accepting applications; (3) despite his qualifications, he was not hired; and (4) after his rejection the position remained open or was filled by a person outside his protected class. *Schoenfeld*, 168 F.3d at 1267. Under the *McDonnell Douglas* framework, once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. If the employer is able to meet its

8

burden, the plaintiff must then prove that the proffered reason is merely a pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093.

Viewing the evidence in the light most favorable to Malu, we conclude that Malu established a *prima facie* case of discrimination. At the trial, Malu testified that he is Nigerian, that he has more than 16 years of experience in the relevant fields, that he was not hired by the City, and that the City continued to accept applications after setting his aside. However, the City had a stated legitimate, non-discriminatory reason for not advancing his application: his failure to sign the required waiver. Therefore, we consider whether the evidence at trial has created a genuine issue of material fact as to whether the City's articulated reason was pretextual.

Malu argues that his evidence was sufficient to show that Slavin, the Ad Hoc Committee, and the City Commission acted as Motes's conduit, or "cat's paw," during the selection process, and therefore Motes's discriminatory animus tainted the decision not to advance his application. Under a "cat's paw" theory, the discriminatory animus of a non-decisionmaking employee may, in certain circumstances, be imputed to the neutral decisionmaker when the decisionmaker does not independently evaluate the situation. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998). "In such a case, the recommender

9

is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (per curiam).

Here, however, there is no evidence to support the contention that Motes affected the City's decision on Malu's application. As indicated, it was the Ad Hoc Committee, not Slavin, that decided not to advance Malu as a candidate. At most, Malu can establish an inference that Slavin placed him on the "special circumstances" list at Motes's direction. Contrary to Malu's suggestion, however, the record does not indicate that the Committee simply acted as a "rubber stamp" for Slavin's recommendations. The testimony at trial indicates that the Committee exercised its own independent judgment in deciding which candidates to submit to the City Commission for consideration. Indeed, it is noteworthy that the Committee decided to advance Darryl Elmore's application notwithstanding the fact that Slavin had placed him on the special circumstances list. Likewise, there is no evidence that Motes in any way influenced the City Commission's evaluation of candidates. Accordingly, Malu's "cat's paw" theory fails.

Because Malu failed to put forth sufficient evidence that the stated reason not to advance his application—his failure to sign the waiver—was a pretext for discrimination, the district court did not err in granting the City's motion for

10

directed verdict on his national origin discrimination claim.

    2.       *Retaliation Claim*

Title VII prohibits retaliation by an employer against an employee or applicants for employment because the applicant has opposed an unlawful employment practice "or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff establishes a *prima facie* case of retaliation under Title VII by showing that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relation between the two events. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The plaintiff can establish a causal connection by presenting evidence that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). We construe the causal link element broadly. *Pennington*, 261 F.3d at 1266. Once the plaintiff establishes a *prima facie* case of retaliation, "the burden of production then shifts to the defendant to establish non-retaliatory reasons for the employment actions." *E.E.O.C. v. Reichhold Chems., Inc.*, 988 F.2d 1564, 1572 (11th Cir. 1993). If the defendant establishes a non-retaliatory reason for the action, the burden then shifts back to the plaintiff to

11

refute these reasons by proving that they are pretextual. *Id.* at 1572.

It is unclear from the trial transcript whether the district court concluded that Malu had established a *prima facie* case of retaliation. However, even assuming that such a case was established, Malu has failed to offer evidence to refute the City's legitimate non-discriminatory reason for not advancing his application. While the Ad Hoc Committee may have been aware that Malu had previously filed a lawsuit against the City, Malu presented no evidence that this fact was in any way a factor in the Committee's decision not to advance his application. As noted, the record indicates that it was Malu's failure to complete the required waiver that determined the outcome of his candidacy. Moreover, as discussed above, the record does not support Malu's assertion that the Committee or the City Commission acted as a conduit for Motes. Thus, the district court properly entered a directed verdict in favor of the City on Malu's retaliation claim.

We affirm the judgment of the district court.

**AFFIRMED.**